# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DAVID DURHAM,
    Plaintiff,

vs.

DETECTIVE JERRY
NIFFENEGGER, et. al.,
    Defendants.

Case No. 1:18-cv-0091
Barrett, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff David Durham brings this action against defendants Jerry Niffenegger and Mark

Purdy, detectives employed by the Warren County, Ohio Sheriff's Office (Sheriff's Office);

Target Corporation (Target); James Christian, a Target employee; and Walmart Stores, Inc.

(Walmart).[1] Plaintiff sues the individual defendants in their individual and official capacities.

Plaintiff seeks relief under 42 U.S.C. § 1983 for alleged violations of his rights under the First,

Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; violations of his

rights under the Ohio Constitution; and violations of Ohio common law. This matter is before

the Court on defendants Walmart, Target, and Christian's motions to dismiss the complaint

(Docs. 16, 20), plaintiff's opposing memoranda (Docs. 21, 22), and defendants' reply

memoranda (Docs. 23, 24).

## I. Allegations of the complaint

Plaintiff makes the following allegations in the complaint (Doc. 1): On February 9, 2016,

plaintiff was operating a business, Games Galore, out of three locations: Harrison in Hamilton

County, Ohio; Northgate Mall in Hamilton County; and Trader's World in Warren County, Ohio.

---

[1] Plaintiff also names three John/Jane Doe defendants: an unidentified Walmart employee and two unidentified employees of the Warren County Sheriff's Office.

(*Id*. at 5). He had started the business as a sole proprietorship in 2004. (*Id*.). Plaintiff was arrested at his Games Galore business located in Northgate Mall on February 9, 2016. (*Id*. at 5, 8). A Warren County grand jury indicted plaintiff on four misdemeanor counts and one felony count of receiving stolen property on August 29, 2016.[2] (*Id*. at 5; Exh. 1). Plaintiff was acquitted of all charges on April 24, 2017. (*Id*.; Exh. 2). As a result of his arrest, plaintiff was forced to close two of his three business locations and now operates only the Trader's World location. (*Id*. at 6).

Prior to his arrest, agents from Target and Walmart had approached individuals at the Sheriff's Office and told them that local independent video game retailers "have an adverse effect on video game sales" at Target and Walmart. (*Id*. at 6). Target and Walmart agents then conspired with agents from the Sheriff's Office "to run sting operations" against plaintiff. (*Id*.). Agents from the Sheriff's Office enlisted an individual by the name of Sentel Brooks, who had been arrested by unidentified police officers at the local Home Depot for theft, to be part of their "sting operation" instead of being prosecuted. (*Id*.). Under the direction of the Sheriff's Office, Brooks sold merchandise which had been obtained from Target with defendant Christian's assistance, to plaintiff at the Trader's World's location on December 20, 2015. (*Id*.). Further, under the direction of the Sheriff's Office, Brooks sold video games and merchandise to plaintiff at his Trader's World location on January 3, 2016. (*Id*.). That property had been obtained from Walmart with the assistance of defendant John Doe #1. (*Id*. at 7). On January 17, 2016 and later dates, defendant Purdy sold video games and other merchandise to plaintiff at his Trader's World location which had been obtained from Walmart and Target's corporate security agents. (*Id*. at 7). At no time did Purdy or any other individual represent to plaintiff that the video games or

---

[2] Plaintiff alleges in the complaint that he was "indicted on multiple felony charges," but that is not reflected on the indictment.

any other merchandise presented to him was stolen, and in fact the merchandise was not stolen. (*Id.* at 6-7).

Throughout the investigation, defendants Purdy, Niffenegger, Christian, and John Doe #1 entered plaintiff's Northgate Mall location several times looking for games they had sold to him at his Trader's World location. (*Id.* at 7). Defendants Purdy and Niffenegger prepared search warrants and affidavits containing false statements which indicated that plaintiff had purchased stolen merchandise and had offered to sell firearms. (*Id.* at 7-8). At no time did plaintiff offer to buy or sell or knowingly buy or sell stolen merchandise or firearms or other weapons. (*Id.*).

A search warrant was issued to the Sheriff of Hamilton County, Ohio for the Northgate Mall location by a Hamilton County judge on February 8, 2016. (*Id.* at 8, Exh. 3). A search warrant was issued to the Sheriff of Warren County for the Trader's World location by a Warren County judge on that same date. (*Id.* at 8, Exh. 4). On February 9, 2016, defendants Purdy, Niffenegger, Christian and John Doe #1 "executed search warrants" for the Northgate Mall and Trader's World locations. (*Id.*). Defendants entered the Northgate Mall location "with SWAT officers and firearms drawn." (*Id.* at 8). Plaintiff, an unidentified employee, and a customer were ordered to get on the ground as firearms "were cocked and brandished directly" at them. (*Id.*). Plaintiff was immediately cuffed with his hands in front of him and the customer was cuffed behind the back. (*Id.*). An employee, Robert Williams, was thrown to the ground, hitting his head on the counter, and was cuffed with his hands behind his back. (*Id.*).

"With a shotgun" pointed at plaintiff, defendant Niffenegger searched plaintiff and demanded to know the location of the safes and firearms. (*Id.*). Colerain Police Officer Joe Hendricks told plaintiff, "We have you dead to rights" and ordered plaintiff to go with the Warren County officers and talk to them. (*Id.*). Defendants Christian and John Doe #1 searched

3

the store with "other police officers." (*Id.*). Property was taken from the Northgate Mall store, including items that were not discussed in the affidavits or listed in the search warrant, and a receipt for the property was filed with the Hamilton County Clerk of Court, Criminal Traffic Division. (*Id.* at 8-9; Exh. 5). The signature on the receipt is illegible. (*Id.*, Exh. 5). Property was also taken from the Trader's World location and included items not discussed in the affidavits or listed on the search warrants. (*Id.* at 9; Exh. 6). The receipt for that property is signed by defendant Purdy. (*Id.*, Exh. 6). Defendant Niffenegger executed a return of the search warrants on February 10, 2016. (*Id.* at 9).

Plaintiff was interrogated at a Colerain Township substation in the Northgate Mall. (*Id.*). The interrogation was recorded, but parts of the interrogation recording are missing and/or deleted and plaintiff does not recall being read his *Miranda* rights. (*Id.*). Defendants Purdy and Niffenegger interrogated plaintiff and accused him of lying.[3] (*Id.*). Agents of the Sheriff's Office placed a total of $2,343.00 of plaintiff's money into evidence. (*Id.*). Plaintiff was acquitted, after which less than $1,000.00 of his money was returned to him. (*Id.*). Most of the merchandise taken from plaintiff's two business locations was released to Target and Walmart and only some of the merchandise was returned to plaintiff. (*Id.*).

At the request of agents of the Sheriff's Office, the Warren County Court of Common Pleas issued a restraining order against plaintiff which prohibited him from entering Trader's World, thus shutting down his business at that location.[4] (*Id.* at 10; Exh. 7). "Police officers" told other Northgate Mall business owners that plaintiff was a criminal, and they told the

---

[3] It is not clear from the complaint whether Purdy and Niffenegger interrogated plaintiff at the Colerain Township substation in Northgate Mall, or whether they conducted a separate interrogation of him at another location. The allegations of the complaint are vague in this regard. (Doc. 1 at 9).

[4] Based on other allegations in the complaint, it appears the business at that location was shut down only temporarily.

manager of that store that he should never let plaintiff come back to the property. (*Id*.). The manager at the Northgate Mall store and at the Harrison location both quit their jobs the day after plaintiff's arrest. (*Id*.). Plaintiff had to close the Harrison location as a result. (*Id*.). Plaintiff tried to keep the Northgate Mall location open, but business suffered and he was eventually forced to close that location in July 2017. (*Id*.).

Plaintiff claims he suffered business and physical losses as a result of defendants' actions. Prior to plaintiff's arrest, his stores had earned at their respective locations over $200,000, $125,000 and $25,000. (*Id*. at 10-11). In 2017, the total earnings were $50,000. (*Id*. at 11). Further, the SWAT team's show of force caused plaintiff to start having panic attacks the day after his arrest. (*Id*.). A physician treated him and prescribed anti-anxiety medication, and he was referred to a psychiatrist who also treated him. (*Id*.). While his criminal case was pending, he developed stage-three kidney failure that was tentatively linked to excessive stress. (*Id*. at 12). Following his arrest, plaintiff suffered anxiety regarding video game trade-ins for fear of being "set up" again; he lost 40 pounds in three months; his medication had to constantly be adjusted; and he suffered gall bladder complications consistent with weight loss from stress and had to have his gall bladder removed. (*Id*. at 12). He also suffered constant fear that he would go to jail and be unable to continue as the sole caregiver for his wife, who had suffered a ruptured brain aneurism in 2012. (*Id*.).

Based on these allegations, plaintiff brings claims under 42 U.S.C. § 1983 for (1) unreasonable search and seizure (Fourth Amendment); (2) excessive force (Fourth Amendment); (3) violation of his rights to freedom of speech, assembly, and association (First Amendment); (4) malicious prosecution (Fourth Amendment); and (5) deprivation of liberty without due process of law (Fifth Amendment). (*Id*. at 12-15). Plaintiff also brings state law claims for (1)

false imprisonment (sixth cause of action); (2) false arrest (seventh cause of action); (3) malicious prosecution (eighth cause of action); (4) assault and battery (ninth cause of action); (5) excessive use of force (tenth cause of action); (6) intentional infliction of emotional distress (eleventh cause of action); (7) negligent infliction of emotional distress (twelfth cause of action); (8) gross negligence and reckless actions (thirteenth cause of action); and (9) theft/conversion/unjust enrichment (fifteenth cause of action). (*Id*. at 15-21). Plaintiff brings a claim for civil conspiracy in violation of both his federal and state constitutional rights (fourteenth cause of action).[5]

## II. Rule 12(b)(6) standard

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations as true and make reasonable inferences in favor of the non-moving party. *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (citing *Harbin-Bey v. Rutter,* 420 F.3d 571, 575 (6th Cir. 2005)). Only "a short and plain statement of the claim showing that the pleader is entitled to relief" is required. *Id*. (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id*. (quoting *Erickson v. Pardus,* 551 U.S. 89, 93 (2007) (internal quotation marks omitted) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). Although the plaintiff need not plead specific facts, the "[f]actual allegations must be enough to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly,* 550 U.S. at 555, 570). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).

---

[5] Plaintiff does not identify the constitutional provisions under which he brings this claim.

The Court may consider documents integral to or attached to the pleadings when ruling on a Rule 12 motion to dismiss without converting the motion to one for summary judgment. *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). In addition, the Court may examine public documents without converting the motion into one for summary judgment. *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*, 413 F.3d 553, 560 (6th Cir. 2005) (citing *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001)). The Court "may take judicial notice of proceedings in other courts of record. . . ." *Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (quoting *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)).

## III. 42 U.S.C. § 1983

Section 1983 creates a civil cause of action against a defendant who, while acting under color of state law, deprives another person of the "rights, privileges or immunities secured by the Constitution or laws of the United States." *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011) (citation omitted). To state a claim for relief under § 1983, "a plaintiff must allege a violation of a right secured by the federal Constitution or laws and must show that the violation was committed by a person acting under color of state law." *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (citations omitted).

"Section 1983 does not, as a general rule, prohibit the conduct of private parties acting in their individual capacities." *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007). However, a private party may be liable under § 1983 if their conduct is "fairly attributable to the state." *Collyer v. Darling*, 98 F.3d 211, 231-32 (6th Cir. 1996) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)). Courts use three tests to determine if the conduct of a private actor is attributable to the state: (1) the public function test; (2) the state compulsion test; and (3)

the symbiotic relationship/joint action test. *Id.* (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1336 (6th Cir. 1992).

The joint action test requires that there be a sufficiently close relationship between the state and the challenged action such that it is fair to treat the action of the private actor as that of the state itself. *Id.* (citing *Wolotsky*, 960 F.2d at 1335). A conspiracy between private actors and state actors can satisfy the joint action test. *See Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985). To validly allege a civil conspiracy, the plaintiff must allege facts to show the parties made a single plan, in pursuit of the shared objective, and an overt act was committed in furtherance of the conspiracy that caused the plaintiff's injury. *Id* at 944.

A private actor's utilization of public services or assistance to the police in their performance of necessary logistics does not convert private action to state action. *See Partin v. Davis*, 675 F. App'x 575, 587 (6th Cir. 2017). It is insufficient to establish a private citizen acted under state law by alleging that he misused or abused a valid statute. *See Hooks*, 771 F.2d at 943 (citing *Lugar,* 457 U.S. at 941).

A private corporation that performs a traditional state function can be sued as a person acting under color of law for violation of an individual's constitutional rights under § 1983. *Rouster v. County of Saginaw*, 749 F.3d 437, 453 (6th Cir. 2014) (citing *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). However, a private corporation cannot be held liable under § 1983 on the basis of *respondeat superior* or vicarious liability. *Id.* (citing *Street*, 102 F.3d at 818). Rather, to hold a private corporation liable under the statute, the plaintiff must prove that the entity was a state actor and both "that his . . . constitutional rights were violated and that a policy or custom of the [corporation] was the 'moving force' behind the deprivation of

the plaintiff's rights." *Id*. (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254-55 (6th Cir. 2010) (citation omitted)).

### A. Defendant Walmart's motion to dismiss plaintiff's § 1983 claims

Defendant Walmart moves to dismiss plaintiff's claims brought against it under § 1983 on two grounds. (Doc. 16). First, Walmart argues that it cannot be held liable under the theory of *respondeat superior* for the alleged actions of a "John Doe" employee, and plaintiff has not alleged any facts to indicate that Walmart had a policy, custom, or procedure that led to the alleged violation of plaintiff's constitutional rights. Second, Walmart contends it is a private entity and cannot be considered a state actor under § 1983.

In response, plaintiff alleges that Walmart qualifies as a state actor under § 1983 because it conspired and acted in conjunction with "police officers" to "manufacture an alleged crime" against plaintiff and put him out of business; therefore, its conduct is "fairly attributed to the state." (Doc. 21 at 5-6, citing *Moody v. Farrell*, 868 F.3d 348 (5th Cir. 2017) (a private citizen may qualify as a state actor if it "is involved in a conspiracy or participates in joint activity with state actors.") (citing *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).

The *Moody* decision on which plaintiff relies holds that "[a] private party does not act under color of state law when [it] merely elicits but does not join in an exercise of official state authority." *Moody*, 868 F.3d at 353 (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1130 (5th Cir. 1988) (quoting *Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 388 (5th Cir. 1985)). Thus, "evidence that a private citizen reported criminal activity or signed a criminal complaint does not suffice to show state action on the part of the complainant in a false arrest case." *Id.* (citing *Daniel*, 839 F.2d at 1130) (quoting *Stream*, 764 F.2d at 388). The plaintiff must further "show

that the police in effecting the arrest acted in accordance with a 'preconceived plan' to arrest a person merely because he was designated for arrest by the private party, without independent investigation." *Sims v. Jefferson Downs Racing Ass'n*, 778 F.2d 1068, 1079 (5th Cir. 1985) (quoting *Hernandez v. Schwegmann Bros. Giant Supermarkets*, 673 F.2d 771, 772 (5th Cir. 1982)). *See, e.g.*, *Smith v. Brookshire Bros., Inc.*, 519 F.2d 93, 94 (5th Cir. 1975) (the plaintiffs showed that pursuant to a prearranged plan, the defendant, a grocery store, "could have people detained [for shoplifting] merely by calling the police and designating the detainee"); *but see Bartholomew v. Lee*, 889 F.2d 62, 63 (5th Cir. 1989) (the fact that "the plaintiffs were arrested in part . . . at the request of the [mall] security personnel, and not *wholly* based on any independent observations of the officers," was not enough to show joint action between the mall and the police) (alteration and emphasis in original).

The allegations of the complaint, liberally construed, are sufficient to support a finding that agents of Walmart conspired or acted jointly with state law enforcement personnel to violate plaintiff's constitutional rights. In support of his claims against Walmart, plaintiff alleges that agents from Walmart approached agents from the Sheriff's Office and stated that local independent video game stores were adversely affecting their video game sales. (*Id.*, citing Doc. 1, ¶ 25). Plaintiff alleges that agents of Walmart conspired with agents of the Sheriff's Office to "run sting operations" against him. (*Id.*, ¶ 26). Plaintiff alleges that an agent of Walmart then took action in furtherance of the alleged conspiracy. Plaintiff alleges that non-party Brooks, acting under the direction of the Sheriff's Office, and defendant Purdy sold video games and merchandise to plaintiff at his Trader's World location, none of which was stolen property. (Doc. 1, ¶¶ 28-38). Plaintiff alleges that some of the items were provided through the assistance of Walmart's security agents and its employee, John Doe #1. (*Id.*, ¶¶ 33, 36). Plaintiff asserts

that all defendants, including the police officers and John Doe #1, came into his Northgate Mall store several times during the investigation looking for games that defendants had sold him at his Trader's World store, which included games that John Doe 1# had helped obtain from Walmart as part of the alleged conspiracy. (*Id.*, ¶ 39). Plaintiff further alleges that Walmart's agent, defendant John Doe #1, executed search warrants at Northgate Mall and Trader's World with the other defendants and "searched the [Northgate Mall] store with other police officers." (*Id.*, ¶¶ 46, 55). Plaintiff alleges that after he was acquitted of all charges against him, some of the merchandise that had been taken from his stores was released to Walmart. (*Id.*, ¶ 68). These allegations, accepted as true, are sufficient to show that one or more agents of Walmart went beyond merely providing information to the police. Instead, they played an active role in instigating an investigation against plaintiff; they assisted police officers in selling merchandise from Walmart to plaintiff; and they participated in the search of the Northgate Mall store that was conducted pursuant to a search warrant. This collaboration with law enforcement officers supports a finding that the actions of Walmart's agents are "fairly attributable" to the state and suffices to qualify Walmart's agents as state actors for § 1983 purposes under the joint action test. *See Collyer*, 98 F.3d at 231-32; *Cf. Moody*, 868 F.3d at 353 (court found the defendant was entitled to summary judgment because evidence showing merely that the defendant designated the plaintiff for arrest did not permit a reasonable inference that pressure from the defendant destroyed the independence of the police officer's investigation).

Nonetheless, plaintiff's allegations are not sufficient to state a claim under § 1983 against Walmart, a corporate entity, for violating plaintiff's constitutional rights. Plaintiff does not allege that a Walmart policy or custom led to the violation of his constitutional rights. To the contrary, plaintiff expressly disavows that agents of Walmart acted pursuant to a policy. Plaintiff

asserts in his opposing memorandum that he has not alleged "the existence of an offending custom or policy" that violated his constitutional rights because "a policy did not affect" him. (Doc. 21 at 6). The absence of a policy compels dismissal of plaintiff's § 1983 claims against Walmart. *See Rouster*, 749 F.3d at 453 (to bring a § 1983 claim against a private entity, the plaintiff must allege that the entity was a state actor and that its employee's action was fueled by an unlawful policy, custom, or regulation of that entity).

Thus, liberally construed, the complaint does not allege sufficient facts to state a claim for relief under § 1983 against defendant Walmart. Plaintiff's § 1983 claims against defendant Walmart should be dismissed.

### B. Defendants Target and Christian's motion to dismiss plaintiff's § 1983 claims

Defendants Target and its employee Christian likewise move to dismiss plaintiff's § 1983 claims against them on the grounds that (1) they are not state actors and therefore cannot be held liable for alleged violations of plaintiff's constitutional rights under § 1983, and (2) plaintiff has not alleged that defendant Target acted pursuant to a policy or procedure. (Doc. 20). Target and Christian argue they do not qualify as state actors under the state compulsion test, the symbiotic relationship/substantial nexus test, or the public function test. (*Id*. at 8-13). In addition, defendants contend that plaintiff has not identified a Target policy, custom or procedure that led to the alleged deprivation of his constitutional rights. (*Id*. at 14). Plaintiff alleges that defendants Target and Christian qualify as state actors under § 1983 because they conspired and acted in conjunction with "police officers" to "manufacture an alleged crime" against plaintiff and put him out of business; therefore, its conduct is therefore "fairly attributed to the state." (Doc. 22 at 5-6, citing *Moody,* 868 F.3d at 348).

The allegations of the complaint, liberally construed, support a finding that agents of Target, and specifically Target employee Christian, conspired or acted jointly with state law enforcement personnel to violate plaintiff's constitutional rights. In support of his claims, plaintiff alleges that agents of Target approached agents from the Sheriff's Office and stated that local independent video game stores were adversely affecting their video game sales. (Doc. 1, ¶ 25). Plaintiff alleges that agents of Target "conspired with agents" of the Sheriff's Office to "run sting operations" against him. (Id., ¶ 26). Plaintiff specifically alleges that Christian took action in furtherance of the alleged conspiracy. Plaintiff alleges that non-party Brooks, acting under the direction of the Sheriff's Office, and defendant Purdy sold video games and merchandise to plaintiff at his Trader's World location, none of which was stolen property. (Doc. 1, ¶¶ 28-38). Plaintiff alleges that some of the items were provided through the assistance of defendant Christian. (Id., ¶ 30). Plaintiff asserts that all defendants, including the police officers and Christian, came into his Northgate Mall store several times during the investigation looking for games that defendants had sold him at his Trader's World store, which included games that Christian had helped obtain from Target as part of the alleged conspiracy. (Id., ¶ 39). Plaintiff further alleges that Christian executed search warrants at Northgate Mall and Trader's World with the other defendants and "searched the [Northgate Mall] store with other police officers." (Id., ¶¶ 46, 55). Plaintiff alleges that after he was acquitted of all charges against him, some of the merchandise that had been taken from his stores was released to Target. (Id., ¶ 68). These allegations, accepted as true, are sufficient to show that Target's employee, Christian, went beyond merely providing information to the police. Instead, defendant Christian played an active role in an investigation that was instigated by agents of Target; he assisted police officers in selling merchandise from Target to plaintiff; and he participated in the search of the Northgate

Mall store that was conducted pursuant to a search warrant. This collaboration with law enforcement officers supports a finding that defendant Christian's actions are "fairly attributable" to the state and suffices to qualify Target's employee as a state actor for § 1983 purposes under the joint action test. *See Collyer*, 98 F.3d at 231-32; *cf. Moody*, 868 F.3d at 353.

Nonetheless, plaintiff's allegations are not sufficient to state a claim under § 1983 against Target, a corporate entity, for violating plaintiff's constitutional rights. Plaintiff does not allege that a Target policy or custom led to the violation of his constitutional rights. Rather, as with his claims against Walmart, plaintiff expressly disavows that a Target policy or custom led to the alleged deprivation of his civil rights. (Doc. 22 at 6). The absence of a policy compels dismissal of plaintiff's § 1983 claim against Target. *See Rouster*, 749 F.3d at 453.

For these reasons, plaintiff's § 1983 claims against defendant Target should be dismissed. Plaintiff should be permitted to proceed beyond the pleading stage on his § 1983 claims against defendant Christian.

## IV.     Plaintiff's state law claims

Plaintiff brings several claims against defendants under Ohio law. Defendants allege that plaintiff's claims are either time-barred by the applicable statute of limitations or do not implicate a Walmart or Target employee. (Docs. 16, 20). Further, defendants argue in their reply memoranda that plaintiff has waived his objections to dismissal of certain claims by failing to address defendants' arguments in his responses to defendants' motions to dismiss. (Doc. 23, Doc. 24).

### A.  Claims for false arrest, false imprisonment, and assault and battery (sixth, seventh and ninth causes of action)

Defendants contend that plaintiff's claims for false arrest, false imprisonment, and assault and battery are time-barred by the applicable one-year statutes of limitations. (Doc. 16, Doc.

20).  Plaintiff alleges in response only that his intentional tort claims are not time-barred because they accrued when the state criminal case against him was dismissed on April 25, 2017, and he filed suit within one year of that date on February 9, 2018.  (Doc. 21 at 6, Doc. 22 at 6-7).

The Court need not address the merits of plaintiff's claims for false arrest, false imprisonment, and assault and battery because those claims are time-barred.  Claims for assault and battery under Ohio law must be brought within one year after the cause of the action accrues.  Ohio Rev. Code § 2305.111.  A cause of action for assault and battery accrues on the date the alleged assault or battery occurred.  Ohio Rev. Code § 2305.111(B)(1).  A claim for false imprisonment or false arrest must also be brought within one year of the date the cause of action accrues, which is the date the plaintiff is released from confinement.  Ohio Rev. Code § 2305.11(A).  *See Rogers v. Barbera*, 164 N.E.2d 162, 164 (Ohio 1960); *see also Alter v. Paul*, 135 N.E.2d 73, 75 (Ohio App. 10th Dist. 1955) (the term 'false arrest' includes false imprisonment and as such an action for false arrest must also be brought within one year after the cause of action accrues).

The facts alleged in the complaint show that these state law claims accrued on February 9, 2016.  That is the date that plaintiff's Northgate Mall and Trader's World locations were searched, his property was seized, and plaintiff was arrested.  Plaintiff does not allege in the complaint that he was confined beyond the date of his arrest.  Plaintiff initiated this lawsuit on February 9, 2018, two years after those events.  Those claims are thus time-barred and should be dismissed on this ground.

## B.  Malicious Prosecution (eighth cause of action)

Plaintiff brings a state law claim for malicious prosecution against all defendants. Plaintiff alleges he was charged with multiple felonies at the direction of and in concert with

"defendants," which resulted in his arrest. (*Id.*, ¶ 121). He alleges that defendants knowingly and maliciously persisted in their wrongful effort to have him arrested for crimes he did not commit, which constituted malicious prosecution. (*Id.*). Defendants argue that plaintiff has not pled a plausible claim for malicious prosecution. (Doc. 16 at 11-12, Doc. 20 at 15-16).

Plaintiff has not addressed the malicious prosecution claim in his memoranda in opposition to defendants' motions to dismiss. (Doc. 21, Doc. 22). By failing to respond to defendants' arguments, plaintiff has waived his opposition to dismissal of the claim. *See Humphrey v. U.S. Atty. Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2008) (plaintiff's arguments were waived by his failure to oppose defendants' motion to dismiss) (citing *Resnick v. Patton,* 258 F. App'x 789, 790-91, n.1 (6th Cir. 2007) (citing *Hood,* 319 F.3d at 760); *Scott v. State of Tennessee,* 878 F.2d 382 (table), 1989 WL 72470, at *2 (6th Cir. 1989)).

Further, plaintiff has not stated a plausible claim for malicious prosecution against the moving defendants because he does not allege that Walmart, Target, or Christian were involved in instituting or continuing plaintiff's criminal prosecution following his arrest. *See Trussell v. Gen. Motors Corp.* 559 N.E.2d 732, syll. (Ohio 1990) (the elements of a malicious prosecution claim are: "(1) malice in instituting or continuing the prosecution; (2) lack of probable cause; and (3) termination of the prosecution in favor of the accused."). The malicious prosecution claim against Walmart, Target and Christian should be dismissed.

### C. Excessive force (tenth cause of action)

Plaintiff brings a claim for use of excessive force in alleged violation of his state constitutional rights against all defendants. Plaintiff alleges that defendants are liable for excessive force because at their direction and in concert with defendants, a SWAT team was deployed to retrieve video games and related merchandise and plaintiff, an employee and

16

customers were detained at gun point. (*Id.*, ¶ 128). Defendants argue that this claim is either time-barred or that plaintiff's allegations do not implicate Walmart, Target, or Christian in any alleged use of force. (Doc. 16 at 10-11, Doc. 20 at 14). Plaintiff has not addressed defendants' arguments, and he has not alleged facts which, if accepted as true, could support the imposition of liability on these defendants for the use of excessive force against plaintiff. Plaintiff's claim for excessive force against defendants Walmart, Target, and Christian should be dismissed.

### D. Negligent Infliction of Emotional Distress (twelfth cause of action)

Defendants Walmart, Target and Christian argue that plaintiff's claim for negligent infliction of emotional distress is time-barred and fails to state a claim for relief against them. (Doc. 16 at 13, Doc. 20 at 16-17). Plaintiff has not addressed defendants' arguments in his memoranda in opposition to the motions to dismiss and has not cited any legal authority or factual allegations in support of this claim. (Doc. 21, Doc. 22). By failing to respond to defendants' arguments, plaintiff has waived his opposition to dismissal of the claim. *See Humphrey*, 279 F. App'x at 331.

Even if plaintiff had addressed the claim in his response, the factual allegations of the complaint are not sufficient to state a claim for negligent infliction of emotional distress because plaintiff does not allege that he was a bystander to an accident or that these defendants placed him in fear of physical danger to his own person. *See Dodge v. United States*, 162 F. Supp.2d 873, 879 (S.D. Ohio 2001) (the plaintiff must have been "a bystander to an accident" or have been placed "in fear of physical consequences to his own person" in order to state a claim for negligent infliction of emotional distress). This claim should be dismissed.

### E. Claim for intentional infliction of emotional distress (eleventh cause of action)

Defendants Target and Christian argue that plaintiff's claim for intentional infliction of emotional distress is barred by the one-year statute of limitations provided in Ohio Rev. Code §§ 2305.11(A) and 2305.111. (Doc. 20 at 16). Defendant Walmart argues that the elements of an intentional infliction of emotional distress claim are not satisfied. (Doc. 16 at 12, citing *Pournaras v. Pournaras*, Nos. 49936, 49937, 1985 WL 4613, at *5 (Ohio App. 8th Dist. Dec. 19, 1985)). Plaintiff argues that his intentional tort claims are not time-barred because he brought the claims within one year of the date of his acquittal, which he alleges is the date he could file suit and obtain relief and thus the date his claims accrued. (Doc. 21 at 6, Doc. 22 at 6-7, citing *Jordan v. Blount County*, 885 F.3d 413 (6th Cir. 2018) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). Plaintiff does not address the merits of his claims in his opposing memoranda.

Plaintiff's claim for intentional infliction of emotional distress is time-barred. "[I]f the set of facts complained of gives rise to a conventional tort action for which the legislature has clearly delineated a statute of limitations, the claim [for intentional infliction of emotional distress] should usually be governed by that statute." *Ransaw v. Lucas*, No. 1:09-cv-02332, 2013 WL 6179418, at *10 (N.D. Ohio Nov. 25, 2013). Plaintiff's claims for intentional infliction of emotional distress appear to be based on the same facts that give rise to his claims for assault and battery, false arrest, and false imprisonment, each of which is governed by a one-year statute of limitations.[6] Thus, the claim is barred by the one-year statute of limitations that governs these causes of action.

---

[6] Insofar as plaintiff seeks to apply the statute of limitations applicable to a malicious prosecution claim to his emotional distress claim against these defendants, that limitations period does not apply. Plaintiff has alleged no facts to support a finding that Walmart, Target, or Christian were involved in the alleged malicious prosecution.

### F. Claims for "gross negligence" and "reckless conduct" (thirteenth cause of action)

Defendants argue that plaintiff's claims for gross negligence and reckless conduct must be dismissed because plaintiff has not identified a tortious act that defendants Walmart, Target, or Christian allegedly committed while acting with the requisite mental state. (Doc. 16 at 16, Doc. 20 at 20). In response to Target and Christian's motions to dismiss, plaintiff alleges only that negligence is characterized by five elements, one of which is an actual causal connection between the defendant's conduct and the resulting harm, and that the complaint clearly states that defendants' actions were reckless. (Doc. 22 at 7, citing Doc. 1, ¶¶ 25-36). Plaintiff has not identified the other elements of a negligence claim and has not addressed whether the factual allegations of the complaint satisfy the elements of a negligence claim against Target or Christian. Plaintiff has not addressed his claims for "gross negligence" and "reckless conduct" at all in his response to Walmart's motion to dismiss. (Doc. 24). The factual bases for his negligence claims against these defendants are not clear from the allegations of the complaint. The complaint does not give defendants "fair notice of what" the [gross negligence and reckless conduct] claim is and the grounds upon which it rests." *See Keys*, 684 F.3d at 608. Plaintiff's claim for "gross negligence" and "reckless conduct" against defendants Walmart, Target, and Christian should therefore be dismissed.

### G. Theft/conversion/unjust enrichment claim (fifteenth cause of action)

Defendants argue that plaintiff's claim for theft/conversion/unjust enrichment must be dismissed because he has not pled a viable cause of action under any of these theories of recovery. (Doc. 16 at 15-16, Doc. 20 at 18-19). Defendant Walmart contends that while plaintiff alleges that merchandise was returned to Walmart and Target after his acquittal (Doc. 1, ¶ 68), plaintiff does not allege "what property was allegedly wrongfully released"; how Walmart

would have known the property was "stolen"; that plaintiff made a demand for the return of the property; and that there was any type of "contract" or "quasi-contract" between Walmart and plaintiff. (Doc. 16 at 16). Defendants Target and Christian likewise argue that there was no contractual or quasi-contractual relationship between plaintiff and defendants; plaintiff does not identify any specific property that was released to Target after his acquittal; he does not allege that Target committed a wrongful act that led to Target obtaining plaintiff's property; and he does not allege that he made a demand to defendants for the return of his property. (Doc. 20 at 18-19). Defendants assert in their reply memoranda that plaintiff has waived this claim by failing to address it in his responses to their motions to dismiss. (Doc. 23 at 7; Doc. 24 at 7).

The Court finds it is appropriate to address whether the complaint states a claim for theft/conversion/unjust enrichment because defendants have not shown that plaintiff has failed to state a claim for relief under each of these theories of recovery.

First, defendants argue that plaintiff has not pled the essential elements of a civil theft offense under Ohio law, which allows a property owner to bring a civil action under Ohio Rev. Code § 2307.60(A) "to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property." *Semco, Inc. v. Sims Bros., Inc.*, No. 9-12-62, 2013 WL 5347400, ¶ 15 (Ohio App. 3d Dist. Sept. 23, 2013). The Court agrees. Plaintiff alleges in support of this claim that "video games and other merchandise" that he lawfully purchased were "seized" from him "[a]t the direction and in concert with the [d]efendants" and was given to defendants Target and Walmart. (Doc. 1, ¶ 146). However, he has not alleged facts in the complaint to support a finding that Target, Walmart, or an agent of either entity committed a "theft offense" in connection with their receipt of the property. Nor has plaintiff addressed the

civil theft claim in response to defendants' motions to dismiss. He has not explained how these defendants' receipt of the video games and other merchandise satisfies the elements of a civil theft claim under Ohio law. The complaint does not give defendants Walmart, Target, and Christian "fair notice of what the [civil theft] claim is and the grounds upon which it rests." *See Keys*, 684 F.3d at 608. Plaintiff's civil theft claim against defendants Walmart, Target, and Christian should be dismissed.

Next, defendants argue that plaintiff has not pled the essential elements of a conversion claim against them. (Doc. 16 at 15, Doc. 20 at 19). "Conversion is the wrongful exercise of dominion over property to the exclusion of the rights of the owner, or withholding it from his possession under a claim inconsistent with his rights." *Semco, Inc.*, 2013 WL 5347400, ¶ 32 (citing *Warnecke v. Chaney*, 194 Ohio App.3d 459 (Ohio App. 3d Dist. 2011) (quoting *State ex rel. Toma v. Corrigan*, 92 Ohio St.3d 589, 592, 752 N.E.2d 281 (2001) (internal quotation marks omitted)). "The elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Id.* (quoting *Miller v. Cass*, No. 3-09-15, 2010 WL 1740891, ¶ 32 (Ohio App. 3d Dist. May 3, 2010) (internal quotation marks omitted)). The plaintiff must prove two additional elements if the defendant "came into possession of the property lawfully": (1) that the plaintiff demanded the return of the property after the defendant exercised dominion or control over the property; and (2) that the defendant refused to deliver the property to the plaintiff." *Id.*, ¶ 33 (collecting cases).

Plaintiff has sufficiently pled the elements of a conversion claim against defendants Walmart, Target, and Christian. Plaintiff alleges that after the corporate defendants and their agents instigated an investigation against him, Walmart, Target and Christian provided or

assisted in providing Walmart or Target merchandise to law enforcement personnel; the merchandise was sold to plaintiff in connection with the investigation; and the property was then seized from plaintiff during the course of a search in which Christian and Walmart's agent participated. (Doc. 1, ¶¶ 25, 26, 28-55). The property, which was seized as part of the alleged unlawful conspiracy, was returned to defendants after plaintiff's acquittal, despite plaintiff's contention that he had legally purchased and acquired the merchandise. (*Id.*, ¶ 68). A reasonable inference can be drawn from these allegations that the corporate defendants unlawfully took possession of property that was seized in the course of the conspiracy and to which plaintiff had a right of ownership. It is not clear at this stage whether Christian played a role in the return of the property. At this stage of the proceedings, viewing the allegations of the complaint and the inferences to be drawn therefrom liberally in plaintiff's favor, plaintiff should be permitted to proceed with his conversion claim against the corporate defendants and Target's agent, Christian.

Defendants Walmart, Target, and Christian contend that a claim for unjust enrichment "is typically a 'substitute' for an otherwise invalid contract" where the plaintiff has conferred a benefit on the defendant and it would be unjust to allow the defendant to retain the benefit without payment. (Doc. 16 at 15, Doc. 20 at 19, citing *Kraft Constr. Co. v. Cuyahoga Cty. Bd. of Commrs.*, 713 N.E.2d 1075 (Ohio 8th App. Dist. 1998)). Defendants argue that a cause of action for unjust enrichment does not lie in a situation like the one presented here, where the parties have no contractual or quasi-contractual relationship.

Generally, a cause of action for unjust enrichment lies "whenever a benefit is conferred by plaintiff upon a defendant with knowledge by the defendant of the benefit and retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Kraft Constr. Co.*, 713 N.E.2d at 1085 (quoting *Hambleton v. R.G. Barry Corp.*, 465

N.E.2d 1298, 1301-1302 (Ohio 1984); *Katz v. Banning*, 617 N.E.2d 729, 735-736 (Ohio 1992)).

Liability may by imposed under a theory of "a contract implied-in-law, or 'quasi-contract'" in

order to prevent unjust enrichment. *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860

(6th Cir. 2002) (citing *Vargo v. Clark,* 716 N.E.2d 238, 242 (Ohio Ct. App. 1998)). "A quasi-

contractual obligation is one that is created by the law for reasons of justice, without any

expression of assent and sometimes even against a clear expression of dissent." *Id.* (quoting 1

ARTHUR LITTON CORBIN, CORBIN ON CONTRACTS, § 1.20 (1993)). There are three

elements of a quasi-contract claim under Ohio law: "(1) a benefit conferred by the plaintiff upon

the defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by

the defendant under circumstances where it would be unjust to do so without payment." *Id.*

(citing *Telephone Mgmt. Corp. v. Goodyear Tire & Rubber Co.,* 32 F. Supp.2d. 960, 972 (N.D.

Ohio 1998); *Hambleton,* 465 N.E.2d at 1302).

Under Ohio law, "[u]njust enrichment also results from a failure to make restitution

where it is equitable to do so." *Id.* at 860-61 (quoting *Cosby v. Cosby,* 750 N.E.2d 1207, 1213

(Ohio Ct. App. 2001) (citations omitted); *cf.* RESTATEMENT OF RESTITUTION: QUASI

CONTRACTS AND CONSTRUCTIVE TRUSTS § 1 (1937) ("A person who has been unjustly

enriched at the expense of another is required to make restitution to the other.")).

Plaintiff's claim for unjust enrichment should not be dismissed at this juncture. The case

law defendants cite does not support their position that a cause of action for unjust enrichment

lies only where the parties to the claim have a quasi-contractual relationship. Moreover, the

allegations of the complaint are sufficient to satisfy the three elements of an unjust enrichment

claim. The complaint supports a finding that defendants benefitted from the receipt of property

which had been seized from plaintiff and returned to defendants without compensation to

plaintiff; defendants knew of the benefit reaped by receipt of the property that plaintiff had previously purchased and which had been seized; and defendants retained the benefit under circumstances where it would be unjust to keep the property without compensating plaintiff. *Reisenfeld & Co.*, 277 F.3d at 860 (citing *Telephone Mgmt. Corp.*, 32 F. Supp.2d. at 972; *Hambleton*, 465 N.E.2d at 1302).

In light of these findings, defendants' motions to dismiss should be granted as to plaintiff's claim for civil theft against defendants Walmart, Target, and Christian. However, plaintiff should not be precluded at the pleading stage from seeking relief for the alleged unlawful retention of his property by the corporate entities and Christian under the theories of conversion and unjust enrichment.

### H. Conspiracy claim (fourteenth cause of action)

Plaintiff brings a conspiracy claim against defendants Walmart, Target, and Christian under state law.[7] Defendants Target and Christian argue that plaintiff's claim is barred by the same statute of limitations that governs his intentional tort claims. (Doc. 20 at 18). Defendants further argue that plaintiff cannot pursue this claim because he does not allege that defendants and agents of the Sheriff's Office agreed to commit an intentional tort, which is an essential element of a civil conspiracy claim under Ohio law. (*Id.*). Defendant Walmart argues that plaintiff cannot bring a civil conspiracy claim against it because he has not alleged an underlying tort by an individual agent of Walmart. (Doc. 21 at 7, Doc. 22 at 7).

---

[7] Plaintiff also claims that defendants engaged in a civil conspiracy in violation of his federal constitutional rights. To the extent plaintiff seeks to bring his conspiracy claim under § 1983 against defendants Walmart and Target, his claim fails for the reasons discussed *supra*. Defendant Christian has not addressed the merits of plaintiff's civil conspiracy claim under § 1983, and plaintiff should be permitted to proceed on this claim against Christian under federal law. *See supra* at 12-14.

In response, plaintiff contends that his conspiracy claim is supported by allegations in the complaint that defendants agreed to fabricate a crime against plaintiff and/or entrap him and to deprive him of his property. (*Id*.). Plaintiff alleges defendants conducted undercover "sting operations which ultimately resulted in a failed attempt at a conviction" and resulted in the loss of his businesses and health complications. (*Id*.).

The tort of civil conspiracy is "'a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages.'" *Williams v. Aetna Fin. Co.*, 700 N.E.2d 859, 868 (Ohio 1998). *See also Zhelezny v. Olesh*, No. 12AP-681, 2013 WL 5450882, ¶ 55 (Ohio App. 10th Dist. March 30, 2017) (citations omitted). Civil conspiracy is an intentional tort under Ohio law. *Id.* (citations omitted). "Civil conspiracy is derivative in that the claim cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Id. See also Williams*, 700 N.E.2d at 868 (an underlying unlawful act is required for a civil conspiracy claim to succeed) (citing *Gosden v. Louis*, 687 N.E.2d 481, 494 (Ohio App. 9th Dist. 1996); *Minarik v. Nagy*, 193 N.E.2d 280, 281 (Ohio App. 8th Dist. 1963)). Conspiracy alone "does not provide a civil cause of action." *Ziegler v. Findlay Industries, Inc.*, 380 F. Supp. 2d 909, 913-14 (N.D. Ohio 2005) (citing *Minarik*, 193 N.E.2d at 281). "The gist of the civil action for conspiracy is the damage caused by acts committed pursuant to a formed conspiracy, rather than the conspiracy itself; and unless something is actually done by one or more of the conspirators which proximately results in damage, no civil action lies against anyone." *Id.* at 914 (quoting *Minarik*, 193 N.E.2d at 281). *See also West v. Kysela*, No. 75594, 2000 WL 23083, at *5 (Ohio App. 8th Dist. Jan. 13, 2000) ("[A] claim for conspiracy cannot be made subject of a civil action unless something is done which, in the absence of the conspiracy allegations, would give rise to an independent cause of action.")

(quoting *Cully v. St. Augustine Manor*, Cuyahoga App. No. 67601 (Apr. 20, 1995) (unreported) (citing *Katz v. Banning* 48 Ohio App.3d 543, 552, 617 N.E.2d 729 (Ohio App. 4th Dist. 1982); *Palmer v. Westmeyer*, 48 Ohio App.3d 296, 300, 549 N.E.2d 1202 (1988); *Stafford v. Greater Cleveland Regional Transit Auth.*, Cuyahoga App. Nos. 63663 and 65530 (Dec. 23, 1993) (unreported)).

Plaintiff civil conspiracy claim brought against defendants Walmart, Target, and Christian under Ohio law should not be dismissed for failure to state a cause of action. For the reasons discussed earlier, the allegations of the complaint, liberally construed, support a finding that agents of Walmart and Target, including Target employee Christian, conspired or acted jointly with state law enforcement personnel to violate plaintiff's rights. *See supra* at 13-14. Plaintiff alleges that agents of the defendant corporations approached agents from the Sheriff's Office to instigate an investigation against plaintiff and conspired to run "sting operations" against him because his stores were adversely impacting their video game sales. (Doc. 1, ¶¶ 25, 26). Plaintiff alleges that defendants took action in furtherance of the conspiracy by providing merchandise to state agents which non-party Brooks and defendant Purdy then sold to plaintiff; entering plaintiff's Northgate Mall store several times during the investigation and looking for games that had been sold to plaintiff at his Trader's World store; executing search warrants at the Northgate Mall and Trader's World stores and searching the Northgate Mall store with police officers; and accepting the return of merchandise that had been taken from plaintiff's stores following his acquittal. (*Id.*, ¶¶ 26-36, 39, 46, 55, 68). These allegations, accepted as true, are sufficient to show that defendants Target and Walmart, acting through their agents, and defendant Christian participated in a civil conspiracy to harm plaintiff's business. Plaintiff has

stated a claim for relief for civil conspiracy against defendants Walmart, Target and Christian under Ohio law.[8]

Plaintiff's civil conspiracy claim under Ohio law should not be dismissed as time-barred based on the allegations of the complaint. The applicable statute of limitations for a civil conspiracy claim is the statute of limitations that applies to the underlying cause of actions. *Bailey v. Ruehlman*, No. 3:16-cv-005, 2016 WL 498877, at *4 (S.D. Ohio Feb. 9, 2016) (Report and Recommendation), *adopted,* 2016 WL 3194772 (S.D. Ohio June 9, 2016) (holding that the appellant "could not circumvent the statute of limitations period by labeling her [conspiracy] claim as a conspiracy to commit defamation.") (citing *West*, 2000 WL 23083, at *5). According to the allegations of the complaint, an action in furtherance of the conspiracy occurred following plaintiff's acquittal on April 24, 2017, when defendants accepted the return of property that had been unlawfully seized from plaintiff's stores as part of the sting operations against him. (Doc. 1, ¶ 68). Plaintiff filed this lawsuit less than one year later on February 9, 2018. Thus, defendants Walmart, Target, and Christian have not shown that plaintiff's civil conspiracy claim brought against them under state law is barred by the statute of limitations.

### IT IS THEREFORE RECOMMENDED THAT:

1. Defendant Walmart's motion to dismiss the complaint (Doc. 16) be **GRANTED** in part and **DENIED** in part consistent with the foregoing.

2. Defendants Target and Christian's motion to dismiss the complaint (Doc. 20) be **GRANTED** in part and **DENIED** in part consistent with the foregoing.

Date: 3/5/19

Karen L. Litkovitz
United States Magistrate Judge

---

[8] Defendants Target and Walmart do not address in the motion to dismiss whether they can be held vicariously liable under Ohio law for torts committed by their agents or employees.

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DAVID DURHAM,
    Plaintiff,

vs.

DETECTIVE JERRY
NIFFENEGGER, et. al.,
    Defendants.

Case No. 1:18-cv-0091
Barrett, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).