UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

DAVID DURHAM       Case No. 1:18-cv-91
    Plaintiff,       McFarland, J.
       Litkovitz, M.J.
vs.

DETECTIVE JERRY NIFFENEGGER, *et al.*,   **ORDER AND REPORT AND**
    Defendants.       **RECOMMENDATION**

Plaintiff David Durham, sole owner of independent video game store Games Galore, alleges that agents from Target and Walmart conspired with Warren County Sheriff's Office personnel to run sting operations against local independent video game retailers, including Durham. According to Durham, certain defendants conducted armed raids of Games Galore locations in January 2016, arrested and falsely charged Durham with serious crimes, and seized legitimate business proceeds, thereby devastating Durham's businesses and causing him financial, emotional, and physical harm, in violation of various constitutional and related state law rights. (Doc. 40).

This matter is before the Court on defendant Hollopeter's motion to dismiss the complaint against him for insufficient service of process (Doc. 94), plaintiff's memorandum in opposition (Doc. 97), and defendant's reply (Doc. 98), as well as defendant Hollopeter's motion to strike plaintiff's application for default and plaintiff's affidavit of service (Doc. 103).

**I. Background**

Plaintiff's original complaint, filed February 9, 2018, listed as a defendant "Unidentified Wal-Mart Employees Address Unknown" "John or Jane Doe #1." (Doc. 1 at PAGEID 2). On October 30, 2019, plaintiff moved to file an amended complaint identifying "John Doe #1" as defendant Scott Hollopeter. (Doc. 41). Over defendant Wal-Mart's objection, the Court granted

in part plaintiff's motion to amend and permitted plaintiff to substitute Scott Hollopeter for "John Doe #1" only for supplemental state law claims for conversion/unjust enrichment and civil conspiracy. (Doc. 57 at PAGEID 331). The Court concluded that plaintiff's claims against Hollopeter under 42 U.S.C. § 1983 and other supplemental state law claims were time-barred and denied plaintiff's motion to amend on those claims. (*Id.*; Doc. 60 at PAGEID 340).

On March 11, 2021, plaintiff moved for an extension of time to serve defendant Scott Hollopeter. (Doc. 75). Plaintiff alleged that Wal-Mart failed to fully cooperate in securing a waiver of service, deposing,[1] and providing a current address for defendant Hollopeter. (*Id.*) In response, Wal-Mart highlighted plaintiff's delay in identifying Hollopeter through pre-filing discovery under Ohio law, resolving Wal-Mart's deficient discovery responses, and recognizing that—because Wal-Mart's counsel did not formally represent defendant Hollopeter at that time—Wal-Mart's counsel had no legal duty to assist plaintiff in obtaining service. (Doc. 76). The Court granted plaintiff's motion to extend time to serve Hollopeter until May 16, 2021. (Doc. 79).

On May 11, 2021, the Court conducted an informal discovery conference in this matter and ordered Wal-Mart to provide certain requested information regarding former Wal-Mart employee Hollopeter so plaintiff could locate and effectuate service of process. (Doc. 537 at PAGEID 537–38). In addition, the Court ordered that plaintiff serve Hollopeter within 30 days of receipt of Hollopeter's information from Wal-Mart. (*Id.* at PAGEID 538).

On May 27, 2021, Hollopeter filed the instant motion to dismiss for insufficient service of process. (Doc. 94). Plaintiff alleged that, as of the filing of its response on June 9, 2021, Wal-

---

[1] According to Durham, Wal-Mart's (and now Hollopeter's) counsel scheduled, canceled, rescheduled, and (after a weather delay) again canceled Hollopeter's deposition. (Doc. 75 at PAGEID 452).

Mart had not complied with the Court's May 11, 2021 order by supplying Hollopeter's information. (Doc. 97 at PAGEID 592).

On July 8, 2021, plaintiff filed a notice of service on defendant Hollopeter (Doc. 101). According to a process server's affidavit, she attempted to serve Hollopeter at his residence on June 25, 2021, June 30, 2021, July 1, 2021, and July 6, 2021, but Hollopeter refused to respond. (Doc. 101 at PAGEID 613).

On July 8, 2021, according to plaintiff's process server, the following occurred:

> Process Server . . . rode in a different vehicle this time to subject's property and sat 2 houses down from subject's house waiting for him to arrive home from work. Subject pulled up in front of his house, driving the white Nissan pickup. Server Heather Bunton quickly approached him asking if he was Robert Scott Hollopeter, (sic) he was caught off guard and said yes. Heather told him she had legal documents to serve him (sic) and he quickly walked away from her. She followed side by side, holding the papers out and told him he was served. He sarcastically said "Thank you" (sic) and smacked the papers with his hand while she held them. Pamela Meadows, the second server, quickly approached his driveway repeating loudly "you are served", "you are served". Pamela then instructed Heather to toss them over the threshold of his 16ft garage door that he had just opened (sic) and she did right by his feet. (sic) Subject turned around inside his garage, was very angry, and with one leg kicked the documents into his driveway, shut the garage door and went inside. Video was then taken of the documents laying in his driveway and the posted documents from 7/6/21 that were still attached to his front storm door, server then videod (sic) the placing of the extra set of documents she had under the White Nissan truck windshield wipers. Subject did not come back outside and both servers left.

(Doc. 101 at PAGEID 613–14). Defendant Scott Hollopeter described the events of July 8, 2021 rather differently:

> During the afternoon of July 8, 2012 (sic), I arrived at my home, and parked my vehicle on the street. As I walked toward the garage entrance of my house, a female individual ran into the yard of my home, yelling "Scott, Scott!" When I did not verbally respond to this person, she approached me without stopping, and shoved an envelope of papers into my chest, which fell to the ground. At no time before assaulting me with the papers did this individual ask my last name or inquire whether I would voluntarily accept the envelope from her. After shoving the papers into my chest, the individual yelled at me, "you've been served!" She then joined

3

another female who was waiting in the street in a car, (sic) and yelled back at me "he says thank you!" The individuals then drove off.

(Doc. 103-1 at PAGEID 623) (paragraph numerals omitted). On September 2, 2021, defendant Hollopeter filed the instant motion to strike plaintiff's application for default[2] and plaintiff's affidavit of service (Doc. 103).

## II. Rule 12(b)(5) Standard

Federal Rule of Civil Procedure 12(b)(5) permits a court to dismiss an action for "insufficient service of process." "[W]ithout proper service of process, consent, waiver, or forfeiture, a court may not exercise personal jurisdiction over a named defendant . . . [a]nd in the absence of personal jurisdiction, a federal court is 'powerless to proceed to an adjudication.'" *King v. Taylor*, 694 F.3d 650, 655 (6th Cir. 2012) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574 (1999)). "Generally, the plaintiff bears 'the burden of establishing [the service's] validity,' . . . [and] [c]ourts may look to 'record evidence' and 'uncontroverted affidavits' in determining whether plaintiffs have met this burden." *Chapman v. Lawson*, 89 F. Supp. 3d 959, 971 (S.D. Ohio 2015) (quoting *Metro. Alloys Corp. v. State Metals Indus., Inc.*, 416 F. Supp. 2d 561, 563 (E.D. Mich. 2006)).

"Courts construe provisions of Rule 4 liberally in order to uphold service, requiring only 'substantial compliance.'" *Lorenz v. Lorenz*, No. , 2021 WL 229288, at *2 (E.D. Mich. May 11, 2021) (quoting *Meyer v. Timothy e. Baxter & Assoc., P.C.*, No. 18-10058, 2018 WL 1858182, at *2 (E.D. Mich. Apr. 18, 2018)). "Where service is ineffective, a court has discretion to either dismiss the action or quash service and retain the case." *Id.* (quoting *Young's Trading Co. v. Fancy Imp., Inc.*, 222 F.R.D. 341, 342–43 (W.D. Tenn. 2004)).

---

[2] Because defendant Hollopeter filed his motion to dismiss for insufficient service of process (Doc. 94) before plaintiff filed his application for entry of default (Doc. 102), the Clerk of Courts terminated plaintiff's application without an entry of default on August 11, 2021.

4

**III. Service of Process on Hollopeter – Timing**

>Pursuant to Rule 4(m):
>
>If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The rule specifically empowers a court to extend the time for service even in the absence of good cause. *See Greene v. Venatter*, No. 2:13-cv-345, 2014 WL 559154, at *2 (S.D. Ohio Feb. 11, 2014). Indeed, this Court already has extended the time for service on Hollopeter until thirty days after Wal-Mart provides the information plaintiff requested in Interrogatory #18 so that plaintiff could ensure service on the correct Scott Hollopeter. (Doc. 89 at PageID 537–38). Before Wal-Mart provided the required information, Hollopeter—represented by Wal-Mart's counsel—filed the instant motion to dismiss for insufficiency of service.[3] Therefore, Hollopeter's motion to dismiss challenging the timing of service should be denied.

**IV. Service on Hollopeter - Sufficiency**

In Hollopeter's motion to strike plaintiff's application for default and affidavit of service, Hollopeter now challenges the sufficiency of plaintiff's service. Specifically, Hollopeter "continues to contend that no valid service has occurred in this case . . . [because] process servers hired by Plaintiff physically assaulted Mr. Hollopeter with a copy of the summons and complaint in this case, without as much as asking him if he would accept service, or even attempting to determine his last name." (Doc. 103 at PAGEID 619).

---

[3] In responding to Hollopeter's motion to dismiss for insufficient service of process, plaintiff's counsel represented to the Court, "As of the filing of this Response, Defendant Wal-Mart has yet to provide [the previously ordered] information." (Doc. 97 at PAGEID 592). In the reply, Hollopeter's (and Wal-Mart's) counsel did not contest that representation. (*See* Doc. 98).

First of all, the Court notes that the process servers' account of personally serving Hollopeter at his residence on July 8, 2021 differs significantly from Hollopeter's recollection. Second, Rule 4(e)(2)(A)[4] provides for service on an individual within the United States by "delivering a copy of the summons and of the complaint to the individual personally." In this case, the process server attempted to hand Hollopeter the summons and complaint personally. Whether Hollopeter knocked the documents out of her hand or the process server shoved them at his chest and he simply let them fall to the ground, it is undisputed that the process server personally delivered the documents to Hollopeter. The Court concludes that the process server's efforts constitute substantial compliance with Rule 4(e)(2)(A) so service has been effectuated.[5]

---

[4] Rule 4(e) provides, in relevant part:
> Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by;
>
> * * *
>
> (2) doing any of the following:
> (A) delivering a copy of the summons and of the complaint to the individual personally;
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

[5] In support of his claim that personal service has not been achieved, Hollopeter cites three easily distinguished cases in which courts found attempted service invalid. (Doc. 103 at PageID 621). In the first case, a plaintiff attempted to achieve substitute service pursuant to Rule 4(e)(2)(B) rather than personal service pursuant to Rule 4(e)(2)(A). *See Ewing v. Pollard*, No. 19-cv-855, 2019 WL 4277403 (S.D. Cal. Sept. 10, 2019). Because the process server in that case did not knock on the door or attempt to ascertain whether the teens were of suitable age to accept service or resided at the residence (as specifically required for substitute service under Rule 4(e)(2)(B)), the court concluded that "throwing the documents at two unidentified teenagers while the garage door is closing is not sufficient for substitute service." *Id.* at *2. The other two cases Hollopeter cites primarily involve service on a corporation pursuant to Rule 4(h). *See Meschkow & Gresham, P.L.C. v. Franchise Capital Corp.,* No. CV 09-2238-PHX-SRB, 2010 WL 11515667 (D. Ariz. August 10, 2010) and *Kovalesky v. A.M.C. Assoc. Merch. Corp.*, 551 F. Supp. 544 (S.D.N.Y. 1982). In *Meschkow*, 2010 WL 11515667, at *2, a process server "threw documents out of an elevator toward an employee of another company that is located in the same building as the Defendants." The employee informed the process server that she was not authorized to accept service on behalf of the defendant corporation and returned the documents to the process server. *Id.* The court found that plaintiffs failed to effectively serve the defendant corporation because it did not comply with Rule 4(h) and failed to effectively serve the individual defendant because "the office location is not [defendant's] usual place of abode." *Id.* Even after finding the service lacking, however, the court denied the defendants' motion to dismiss and granted the plaintiffs an additional thirty days from the date of the order to perfect service. *Id.* at *4.

Finally, even if service had not been achieved, Wal-Mart's counsel now formally represents Hollopeter. (Doc. 93). The Court is advised that "Plaintiff provided another request for Waiver of Service now that Defendant Hollopeter has formally entered an appearance." (Doc. 97 at PAGEID 593). Thus, even if plaintiff had not already effectuated service, Hollopeter has "a duty to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1); *see also Finnell v. Eppens*, No. 1:20-cv-337, 2021 WL 2280656 (S.D. Ohio June 4, 2021). Pursuant to Rule 4(d)(2):

> If a defendant located within the United States fails, without good cause, to sign and return a waiver requested by a plaintiff located within the United States, the court *must* impose on the defendant:
> (A) the expenses later incurred in making service; and
> (B) the reasonable expenses, including attorney's fees, of any motion required to collect those service expenses.

Fed. R. Civ. P. 4(d)(2) (emphasis added). Therefore, because plaintiff achieved personal service pursuant to Rule 4(e)(2)(A) by the date previously designated by the Court and because, even if service had not been achieved, Hollopeter is now obligated to waive service or pay expenses incurred in obtaining service, his motion to strike plaintiff's affidavit of service must be denied.

### IT IS THEREFORE ORDERED THAT:

Defendant Hollopeter's motion to strike plaintiff's application for default and plaintiff's affidavit of service (Doc. 103) is **DENIED**. However, no default shall be entered as Hollopeter has appeared and filed a Rule 12(b)(5) motion.

7

**IT IS THEREFORE RECOMMENDED THAT:**

Defendant Hollopeter's motion to dismiss for insufficient service of process (Doc. 94) be **DENIED**.

Date: 9/17/2021

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| DAVID DURHAM<br>    Plaintiff, | Case No. 1:18-cv-91<br>McFarland, J.<br>Litkovitz, M.J. |
| vs. | |
| DETECTIVE JERRY NIFFENEGGER, *et al.*,<br>    Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).