# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| **DAVID DURHAM** , | : | |
| | : | Case No. 1:18-cv-00091 |
| *Plaintiff,* | : | |
| | : | Judge Jeffery P. Hopkins |
| v. | : | |
| | : | Magistrate Karen L. Litkovitz |
| **DETECTIVE JERRY** | : | |
| **NIFFENEGGER,** *et al.*, | : | |
| | : | |
| *Defendants.* | : | |

---

## OPINION AND ORDER

---

Plaintiff David Durham is no newcomer to the judicial process. In 1987, Durham was charged with theft by deception. The charge was later dismissed. On August 29, 2016, Durham was indicted on five counts of receiving stolen property pursuant to Ohio Revised Code Section 2913.51(A) in a case captioned *State of Ohio v. David Durham*, Case No. 16CR32278, in the Court of Common Pleas of Warren County, Ohio (the "Criminal Case"). As a part of its investigation, the State of Ohio seized certain property and monies from Durham. The State failed to uphold its burden of proof and the case was dismissed at trial.

Durham then filed a motion requesting the return of, or to be compensated for, the property and money seized during the Criminal Case. Durham even negotiated an agreement with the State consistent with his request. The criminal court granted his motion and accepted the agreement. After Durham received the requested items, he filed this lawsuit, which includes state law claims alleging that he was not properly compensated for the property, as well as violations of his constitutional rights under 42 U.S.C. § 1983.

After years of litigation and discovery, Defendants Walmart Stores, Inc. ("Walmart") and its employee, Scott Hollopeter, Target Corporation ("Target") and its employee, James Christian, and Detectives Jerry Niffenegger and Mark Purdy of the Warren County Sheriff's Office ("WCSO"), now move the court for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons discussed, the Court finds that Durham is judicially estopped from asserting his state law claims. Durham has already litigated – and has been compensated for the relinquishment of – his rights concerning the seized property and cannot revisit that issue. The Court also finds no genuine issue of material fact concerning the alleged violations of Durham's constitutional rights. The record conclusively shows that his constitutional rights were not violated. Accordingly, the Court **GRANTS** Defendants' Motions for Summary Judgment (Docs. 163, 167, 169) and **DISMISSES** Durham's Amended Complaint (Doc. 40) **WITH PREJUDICE**.

## I.    BACKGROUND

### A.    After a Third-Party Tip, the Walmart and Target Defendants Suspect Durham's Video Game Resale Business is a "Fencing" Operation.

Plaintiff David Durham owned and operated three retail store locations that were engaged in the buying and selling of used video games and related merchandise. Durham Dep., Doc. 142, PageID 997–78. Durham's retail stores include two "Games Galore" stores – one located at the Northgate Mall in Cincinnati, Ohio, and one located in Harrison, Ohio – and a Games Galore booth at Traders World in Monroe, Ohio. *Id.* at PageID 807. David has operated his resale business since 2004. *Id.*

In October of 2015, an individual named Sentel Brooks was apprehended for shoplifting by Home Depot security. Christian Dep., Doc. 146, PageID1831. Brooks informed a Home Depot investigator, Jaime Mansfield, that he had been stealing products

from Target and Walmart and reselling the products at Durham's stores – a process known as fencing.  *Id.*; Hollopeter Dep., Doc. 149, at PageID 2233–34.  Fencing is a type of criminal activity where stolen merchandise (*i.e.,* merchandise from Brooks) is knowingly bought by a "fence" (*i.e.,* Durham's stores) and sold at low prices to end consumers.  Christian Dep., Doc. 146, PageID 1863.  Mansfield relayed the information about Durham separately to Defendant Niffenegger of the WCSO, Defendant Christian, an investigator employed by Target, and Defendant Hollopeter, an investigator employed by Walmart.  *Id.* at PageID 1841–42, 1866–67.

**B.**    **The WCSO Begins Its Investigation into Durham.**

In December of 2015, an investigation into Durham's alleged fencing operation commenced involving Defendants Walmart and Hollopeter, Target and Christian, and detectives from the WCSO.  Doc. 149, PageID 2235–36.  Defendant Jerry Niffenegger of the WCSO led the investigation of Durham (Doc. 144, PageID 1167), and Defendant Mark Purdy of the WCSO served an active role in the investigation in an undercover capacity.  Doc. 145, PageID 1613.  Walmart and Target participated in the investigation by providing merchandise to the WCSO that would be passed off as "stolen" to Durham through controlled sales.  Doc. 149, PageID 2325–44.  The controlled sales would allow the WCSO to determine whether Durham's stores operated as fences.  *Id.*  Walmart and Target had engaged in similar operations with law enforcement in the past.  *Id.* at PageID 2252–53; Doc. 146, PageID 1841.

The investigation of Durham occurred over a period of months.  It consisted of information gathering, along with a series of controlled sales to Durham by Sentel Brooks and Defendant Purdy.  *See generally,* Doc. 144-8.  On December 20, 2015, Brooks entered Durham's Traders World booth and sold Durham brand new video game merchandise in

sealed packaging that was obtained from Target. *Id.* at PageID 1466. Brooks advised Durham that he was "risking his life to obtain the product," and indicated to the WCSO that he believed Durham was familiar with their past transactions. *Id.* Durham also advised Brooks that he would be able to obtain firearms from Indiana for Brooks to purchase. *Id.* An additional sale of merchandise was made by Brooks to Durham on January 3, 2016, using similar merchandise from Walmart. *Id.*

Defendant Mark Purdy made five sales to Durham throughout January and February of 2016. *Id.* at PageID 1468–70. Purdy sold Durham merchandise from both Walmart and Target, including sealed video games and devices with spider-wire security. *Id.* The WCSO verified that the same merchandise sold to Durham was on sale at his stores. *Id.* at PageID 1467–70.

Based upon the investigation, two search warrants were issued for Durham's retail locations at the Northgate Mall and Traders World on February 8, 2016. *Id.* at PageID 1470; Docs. 144-5, 144-6. The warrants authorized the search of each location for "the said goods, chattels, or articles, and to retrieve any evidence of criminal activity which may be found," including Xbox 1 and PlayStation 4 games, controllers, any new gaming systems and games in original packaging, documents, safes, firearms, US currency, and any items obtained and/or received through the commission of a crime. Docs. 144-5, 144-6. The warrants were signed by judges in the Court of Common Pleas of Warren County, Ohio, and the Municipal Court of Hamilton County, Ohio. Docs. 144-5, 144-6.

The next day, the WCSO executed a search warrant and, along with an officer from Colerain Township, entered Durham's Northgate Mall location with weapons drawn. Doc. 142, PageID 883. Defendant Niffenegger indicated that firearms were utilized by the officers

4

at the scene because of intel that Durham may have firearms at the store. Doc. 144, PageID 1269. One unidentified officer entered with a loaded shotgun which was pointed at Durham. Doc. 142, PageID 884. The shotgun was raised for approximately thirty seconds. Williams Dep., Doc. 150, PageID 2386–87. Durham was ordered to the ground by the officers and remained there for about one minute. Doc. 142, PageID 884. Officer Hendricks of the Colerain Township Police Department subsequently stood Durham up and put him in handcuffs for about ten minutes. *Id.* at PageID 884, 887. Durham suffered no physical injuries from the execution of the search warrant. *Id.* at 888–89.

Defendants Hollopeter and Christian arrived on the scene after the warrant was executed to assist with the identification of Walmart and Target property. Doc. 144, PageID 1315; Doc. 146, PageID 1930–31; Doc. 149, PageID 2254. The remaining property sold to Durham through controlled sales was seized, and items seized were consistent with the search warrant. *Compare* Doc. 144-5 *with* Doc. 144-8. Durham was provided with a complete inventory of the seized property. Doc. 144, PageID 1323–24; Doc. 144-8, PageID 1470–71.

Next, the WCSO officers executed the search warrant for Durham's Traders World booth. Doc. 144, PageID 1271. The WCSO identified and removed property in accordance with the search warrant. *Compare* Doc. 144-6 *with* Doc. 144-8. Like the previous search, Defendants Hollopeter and Christian arrived on the scene after the WCSO executed the warrant to assist with the identification of property loaned by Walmart and Target. Doc. 144, PageID 1315; Doc. 146, PageID 1930–31; Doc. 149, PageID 2254. Durham was provided with a complete inventory of the seized property. Doc. 144, PageID 1323–24; Doc. 144-8, PageID 1470–71; Doc. 144-17, PageID 1569–71.

**C.      Durham is Indicted on Five Charges and Subsequently Acquitted at Trial.**

On August 29, 2016, a grand jury indicted Durham on five total counts – four first degree misdemeanor counts and one fifth degree felony count – of receiving stolen property in violation of Ohio Revised Code § 2913.51(A). Doc. 143, PageID 998; Doc. 1, PageID 23–25. On or about October 4, 2016, the WCSO returned some of the property to Walmart and Target. Doc. 144-16, PageID 1518–68. Durham's criminal case was dismissed on April 24, 2017, after the State presented its case, pursuant to Rule 29 of the Ohio Rules of Criminal Procedure. *See generally*, Doc. 154-1.

**D.      Durham Files a Motion for Return of Property and Receives the Property Seized by the WCSO or Compensation for the Same.**

About a month later, Durham filed a motion for return of property with the criminal court on May 18, 2017. Doc. 142-5, PageID 1020–23. Durham's motion requested the return of property and money that was seized from his stores pursuant to the search warrants, or, in the alternative, to be compensated monetarily for the property. *Id.* at PageID 1020. Durham also provided the criminal court with a list of the requested property and money. *Id.* at PageID 1022–23.

On June 19, 2017, the criminal court held a hearing on Durham's motion. *See generally,* Doc. 158-2. At the hearing, Durham's counsel explained the agreement that was reached with the State of Ohio:

> The agreement is all the property that was seized from my client, is going to be returned with the following exceptions: There is one Covert Forces controller and one Star Wars Battlefront Xbox One game that were both bought from my client at cost by the Sheriff's Office. They're keeping those two items. There's also fifteen games and two controllers which are no longer in the possession of the Sheriff's Office, because they've given them back to either Target or Wal-Mart. They've agreed to compensate my client in the amount of $320 for those items.

6

Doc. 158-2, PageID 2599. The parties also determined that Durham would receive all cash seized from his store locations. *Id.* The agreement was memorialized in an agreed entry that the criminal court entered. Doc. 142-6, PageID 1024. Durham then received the available seized property, $574.13 seized from his cash register, and compensation in the amount of $320.00 for seized property which was unavailable. Doc. 142, PageID 898–902.

      **E.**     **Durham Files This Lawsuit.**

The current matter has a lengthy procedural history. On February 9, 2018, Durham filed the present suit. Doc. 1. Initially, only Niffenegger, Purdy, Walmart, Target, and Christian were named as defendants along with Does 1–4. *Id.* Durham pressed constitutional claims of unreasonable search and seizure, excessive force, violations of his First Amendment rights, malicious prosecution, and deprivation of due process under 42 U.S.C. § 1983. *Id.* And state law claims of conversion, false imprisonment, false arrest, malicious prosecution, assault and battery, excessive use of force, intentional infliction of emotional distress, negligent infliction of emotional distress, gross negligence and reckless actions, civil conspiracy, and theft, conversion, and unjust enrichment. *Id.*

All claims remain against Defendants Niffenegger and Purdy, as they chose to file their Answer to the Complaint on May 18, 2018. Doc. 18. On the other hand, Defendants Walmart, Target, and Christian chose to file Motions to Dismiss. Docs. 16, 20. The Court granted in part, and denied in part their Motions, leaving only Durham's § 1983 claims against Defendant Christian, and state law claims for conversion, unjust enrichment, and civil conspiracy against Defendants Walmart, Target, and Christian. Docs. 25, 30.

Durham then filed a motion for leave to amend his Complaint to identify John Doe 1 as Defendant Scott Hollopeter. Doc. 41. The Court granted that motion, but only allowed

Durham leave to bring supplemental state law claims against Hollopeter for conversion, unjust enrichment, and civil conspiracy. Docs. 57, 60.

After a several years of litigation, Defendants each filed Motions for Summary Judgment in December of 2022. Docs. 163, 167, 169. The Court now considers each issue raised in turn.

## II.    STANDARD OF REVIEW

Defendants seek summary judgment. "The 'part[ies] seeking summary judgment always bear[] the initial responsibility of informing the district court of the basis for [their] motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

But the non-moving party cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (bracket and emphases omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). In other words, the dispute must be "genuine" (*i.e.*, supported by evidence) and go to a "material fact" (*i.e.*, a fact that could matter to the outcome).

In sum, after reviewing the cited evidence, the Court must determine whether there is some "sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–

8

52). In making that determination, though, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

## III.    LAW AND ANALYSIS

To resolve Defendants' summary judgment motions, the Court must make several determinations.

First, does the doctrine of judicial estoppel apply to Durham's remaining state law claims?[1] If not, is there a genuine dispute of material fact concerning the merits of Durham's state law claims? Ultimately, the Court finds that Durham is judicially estopped from making claims that he was not properly compensated for, or is the rightful owner of, the seized property acquired by Defendants Walmart and Target. And based on that finding, the Court concludes that Defendants are entitled to summary judgment on Durham's civil theft, conversion, and unjust enrichment claims.

Second, are Defendants Niffenegger and Purdy entitled to qualified immunity for their actions in executing the search warrants against Durham? The Court finds that the search warrants were supported by probable cause, Defendants Niffenegger and Purdy's actions were

---

[1] Consistent with its previous ruling, this Court need not address the merits of Durham's state law claims for false arrest, false imprisonment, and assault and battery that remain against Defendants Niffenegger and Purdy because those claims are time-barred. Docs. 25, 30. Those claims must be brought within one year after the cause of action accrues. *See* Ohio Rev. Code § 2305.111 (one-year statute of limitations for claims of assault and battery); Ohio Rev. Code § 2305.11(A) (one-year statute of limitations for claims of false imprisonment or false arrest). It is undisputed that these state law claims accrued on February 9, 2016, and Durham initiated this lawsuit on February 9, 2018 – two years after those events. The Court also need not address any federal civil conspiracy.

objectively reasonable, and the Defendants did not violate Durham's constitutional rights. Accordingly, when affording all reasonable inferences to Durham, and construing the evidence in the light most favorable to him, the Court concludes Defendants Niffenegger and Purdy are entitled to summary judgment on Durham's § 1983 claims.

Last, did Defendant Christian engage in a conspiracy to violate Durham's constitutional rights, making him a § 1983 state actor? Durham has not established a conspiracy to violate his constitutional rights between Defendant Christian and the State because his constitutional rights were not violated. Defendant Christian is therefore entitled to summary judgment on Durham's § 1983 claims.

The Court will address each of the issues presented in turn.

### A. Durham's Civil Theft, Conversion, and Unjust Enrichment Claims are Barred by the Doctrine of Judicial Estoppel.

As a threshold issue, Defendants argue that Durham's civil theft,[2] conversion, and unjust enrichment claims are barred by the doctrine of judicial estoppel. Durham argues that because Defendants Walmart and Target received the seized property before the agreed entry was entered, his current position is not inconsistent with his position in the related criminal action. The Court disagrees with Durham.

An equitable doctrine, judicial estoppel holds that, "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." *Watkins v. Bailey*, 484 F. App'x 18, 20 (6th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)). "The Supreme Court has provided three factors to assess whether judicial

---

[2] The only civil theft claims that remain at this stage are against Defendants Niffenegger and Purdy.

estoppel should be applied in a particular case: (1) whether the party's current position is 'clearly inconsistent' with its previous one; (2) whether the earlier court actually accepted the party's position; and (3) whether the party against whom judicial estoppel is invoked would 'derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *Grise v. Allen*, 714 F. App'x 489, 495 (6th Cir. 2017) (quoting *New Hampshire*, 532 U.S. at 750–51). However, these factors are not "inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire*, 532 U.S. at 751.

The Sixth Circuit has noted that the first two factors for judicial estoppel identified in *New Hampshire* bar a party from "(1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (internal quotations omitted). Regarding this "prior success" requirement, the party against whom the judicial estoppel doctrine is to be invoked need not have prevailed on the merits of the action; rather, it is sufficient if the first court has adopted the position urged by the party as a preliminary matter. *Reynolds v. Comm'r of Internal Revenue*, 861 F.2d 469, 473 (6th Cir. 1988). "Because the doctrine is intended to protect the judicial system, *rather than the litigants,* detrimental reliance by the opponent of the party against whom the doctrine is applied is not necessary." *Felix v. Dow Chem. Co.*, No. 2:07-cv-971, 2008 WL 207857, at *3 (S.D. Ohio Jan. 23, 2008) (quoting *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999)) (emphasis in original).

The record of a criminal proceeding may support a finding of judicial estoppel in a civil matter. *See Wloszek v. Weston, Hurd, Fallon, Paisley & Howley, LLP*, 8th Dist. Cuyahoga

No. 82412, 2004-Ohio-146, ¶ 40(application of judicial estoppel applies in civil proceedings where an issue was determined in a criminal proceeding); *Lovett v. Lucas*, No. 1:08CV1253, 2012 WL 13171308, at *18–19 (N.D. Ohio Jan. 4, 2012) (citing *Lowery v. Stovall*, 92 F.3d 219, 225 (4th Cir. 1996)) (judicial estoppel prevented a plaintiff from asserting a position in a Section 1983 action contrary to the factual basis of his guilty plea). To apply the principle of estoppel, however, the trial court in the subsequent civil proceeding must examine the record to determine exactly what was decided in the criminal proceeding. *Emich Motors Corp. v. Gen. Motors*, 340 U.S. 558, 569 (1951). Estoppel extends only to questions "distinctly put in issue and directly determined" in the criminal prosecution. *Id.* at 569. In aid of its determination, the trial court must look to the record, the pleadings, the evidence submitted, the jury instructions, and any opinions of the courts. *Id.*

Applying the elements of judicial estoppel, the Court finds that Durham relinquished ownership of the subject property in the Criminal Case, thus is estopped from making his civil theft, conversion, and unjust enrichment claims.

Regarding the "prior success" requirement, the Court finds that Durham asserted a contrary position in the Criminal Case that the criminal court accepted. Durham's position in this matter – that he was not properly compensated for the seized property – is clearly inconsistent with the position adopted by the criminal court at his behest. In the Criminal Case, Durham filed a motion seeking the "return of property and money." Doc. 142-5, PageID 1020. Durham provided a list of merchandise and money that he requested to be returned to him, "or in the alternative . . . reimbursed monetarily for the property." *Id.* at PageID 1020–23. Consistent with this request, Durham (through his counsel) and the State of Ohio negotiated an agreed entry. *See* Doc. 142-6. The criminal court held a hearing on the

12

motion and agreed entry on June 19, 2017. *See generally,* Doc. 158-2. At the hearing, Durham's counsel explained the agreement that was reached with the State of Ohio:

> The agreement is all the property that was seized from my client, is going to be returned with the following exceptions: There is one Covert Forces controller and one Star Wars Battlefront Xbox One game that were both bought from my client at cost by the Sheriff's Office. They're keeping those two items. There's also fifteen games and two controllers which are no longer in the possession of the Sheriff's Office, because they've given them back to either Target or Wal-Mart. They've agreed to compensate my client in the amount of $320 for those items.

Doc. 158-2, PageID 2599. The parties also determined that Durham would receive all cash seized from his store locations. *Id.* The agreement was memorialized in an agreed entry that the criminal court adopted. As a result, Durham received the available seized property, $574.13 seized from his cash register, and compensation in the amount of $320.00 for seized property which was unavailable. Doc. 142, PageID 898–902.

The Court also finds that Durham's civil theft, conversion, and unjust enrichment claims are an attempt to derive an "unfair advantage" from the judicial system. Durham is asking the Court to compensate him for property that the government has already compensated him for. A litigant is not entitled to take advantage of the legal system by "double dipping" under these circumstances. *See e.g., EEOC v. Waffle House, Inc.*, 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can and should preclude double recovery by an individual."). Such a result would amount to the "unfair advantage" that the doctrine of judicial estoppel is designed to prevent.

Based on the above, Durham is judicially estopped from making claims that he was not properly compensated for, or is the rightful owner of, the seized property acquired by

13

Defendants Walmart and Target. Durham's civil theft,[3] conversion,[4] and unjust enrichment[5] claims against all Defendants are, therefore, barred. [6]

### B.    Defendants Niffenegger and Purdy are Entitled to Qualified Immunity.

Defendants Niffenegger and Purdy argue that they are entitled to qualified immunity on Durham's federal claims because their conduct was objectively reasonable during the investigation and apprehension of Durham. The doctrine of qualified immunity generally protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis comprises two considerations: (1) "whether the facts alleged make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established when the event occurred so that a reasonable officer

---

[3] A civil theft offense under Ohio law allows a property owner to bring a civil action under Ohio Revised Code Section 2307.60(A) "to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property." *Semco, Inc. v. Sims Bros., Inc.*, 3d Dist. Marion No. 9-12-62, 2013-Ohio-4109, ¶ 15. As a threshold matter, Durham cannot now bring a civil theft claim for property allegedly stolen that he was compensated for and no longer owns.

[4] Under Ohio law, "[t]he threshold inquiry for a conversion claim is whether there exists some property interest or right." *Bunta v. Superior VacuPress, L.L.C.*, 171 Ohio St. 3d 464, 470 (Ohio 2022). Durham cannot pass this threshold inquiry as his rights to the property were relinquished in the criminal matter.

[5] In Ohio, to recover on "a claim of unjust enrichment, a plaintiff must allege: (1) a benefit conferred by plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Mirlisena v. Babu*, No. 1:15-CV-00058, 2015 WL 8539010, *3 (S.D. Ohio Dec. 11, 2015) (internal quotations omitted). Even if Durham had adequately argued the first two unjust enrichment elements, there is no genuine dispute of material fact that Durham was compensated by the government for any property acquired by Defendants. As such, it would not be "unjust" for Defendants to retain said benefit.

[6] As a matter of law, Durham's civil conspiracy claim against Defendants also fails. *See Parmater v. Internet Brands, Inc.*, 10th Dist. Franklin No. 14AP-391, 2015-Ohio-253, ¶ 31 ("Civil conspiracy is derivative and the claim cannot be maintained absent an underlying tort that is actionable without the conspiracy.")

would have known that his conduct violated it." *Crawford v. Tilley*, 15 F.4th 752, 762–63 (6th Cir. 2021). If the answer to these questions is "yes," qualified immunity is improper. *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901 (6th Cir. 2004) (citations omitted).

"[A]n official 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'" *Ouza v. City of Dearborn Heights*, 969 F.3d 265, 275 (6th Cir. 2020) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). To determine whether a right is clearly established, "a district court must look to then-existing binding precedent from the Supreme Court, the Sixth Circuit or itself." *Adams v. Ohio Univ.*, 300 F. Supp. 3d 983, 1001 (S.D. Ohio 2018). It is not the case that for a right to be "clearly established," the specific action at issue must previously have been held unlawful, but "it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The analysis of whether a right is "clearly established" must be "undertaken in light of the specific context of the case, not as a broad general proposition." *Floyd v. City of Detroit*, 518 F.3d 398, 405 (6th Cir. 2008). Ultimately, summary judgment should be denied if the undisputed facts, taken in the light most favorable to the plaintiff, show that the defendants violated clearly established rights or reveal a factual dispute "such that it cannot be determined before trial whether the defendant did acts that violate clearly established rights." *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988); *see Vakilian v. Shaw*, 335 F.3d 509, 515 (6th Cir. 2003) (stating that summary judgment on qualified immunity grounds is improper "if genuine issues of material fact exist as to whether the officer committed acts that would violate a clearly established right").

Defendants Niffenegger and Purdy argue that summary judgment is proper on Durham's federal claims because their conduct did not violate the constitutional rights of Durham. The Court discusses each of Durham's federal claims against Defendants Niffenegger and Purdy in turn.

### i.    Unreasonable Search and Seizure.

In disputing probable cause, Durham claims Defendants Niffenegger and Purdy relied upon, and made, false statements in the affidavits supporting the search warrants against him. The Court finds Durham's claims are unsupported.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. CONST. AMEND. IV. The Sixth Circuit instructs that:

> The probable cause requirement . . . is satisfied if the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched.

*Green v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996) (quoting *United States v. Besase*, 521 F.2d 1306, 1307 (6th Cir. 1975)). A finding of probable cause does not require certainty or a preponderance of the evidence. *Illinois v. Gates*, 462 U.S. 213, 235 (1983). Rather, the task of the issuing magistrate is "simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Glowacki*, No. 22-3279, 2023 WL 179887, at *3 (6th Cir. Jan. 13, 2023) (quoting *Gates*, 462 U.S. at 238). The reviewing court is "tasked only with ensuring that the magistrate had a 'substantial basis for . . . concluding that probable cause existed' based on the 'totality of the circumstances.'" *Id.* (quoting *Gates*, 462 U.S. at 236, 238 (cleaned up)).

16

To determine the question of qualified immunity, this Court must determine whether the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *Malley v. Briggs*, 475 U.S. 335, 343–45 (1986). "While we look at the facts in the light most favorable to the plaintiff, the facts we are looking at are those known to [the defendants] when [they] sought the warrant." *Hale v. Kart,* 396 F.3d 721, 724–25 (6th Cir. 2005). "We apply a standard of objective reasonableness." *Id.* at 725.

In § 1983 actions, an officer ordinarily receives qualified immunity if they rely on a judicially secured warrant. *Malley*, 475 U.S. at 343–45. Therefore, we must first determine whether the warrants are so lacking in the indicia of probable cause that the reliance of Defendants Niffenegger and Purdy on the warrants was unreasonable. Because the Defendants' affidavits provided the sole basis for the warrants, we must evaluate the sufficiency of the affidavit.

> ### a. The Affidavits are Sufficient.

Affidavits do not have to be perfect, nor do they have to provide every specific piece of information to be upheld:

> Affidavits are not required to use magic words, nor does what is obvious in context need to be spelled out; if a CI [(*i.e.,* confidential informant)] saw guns, he is not required to explain how he knew what a gun looks like. Nor is an affidavit required to present proof that would without question withstand rigorous cross-examination. . . . Taken as a whole, the affidavit provided sufficient facts from which the magistrate could draw an independent conclusion as to the probability (certainty is not required) of what it alleged a search would disclose.

*United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc). In addition, we look at warrants, and, in this case, the affidavit supporting the warrant, using a totality of the circumstances test. *Gates*, 462 U.S. at 230–31. The totality of the circumstances test requires us to evaluate the probabilities of finding criminal activities based on the evidence provided

in the affidavit, as opposed to requiring that the evidence in the affidavit guarantees the discovery of criminal activity. *Id.*

In this case, the affidavits are sufficient. The affidavits detail how a confidential informant – Sentel Brooks – indicated that he has sold stolen property to Durham at his Games Galore location in Lebanon, Ohio, for years. Docs. 144-5 and 144-6. The affidavits describe how Brooks and Defendant Purdy repeatedly sold merchandise, which was represented as stolen, to Durham. The affidavits also outline the subsequent verification of the same merchandise for sale in Durham's store by WCSO personnel, including Defendant Niffenegger. Furthermore, the affidavit also included Brooks' statement that Durham "offered to sell [Mr. Brooks] firearms if he was interested in purchasing any. He stated that the guns [were] coming from Indiana." *Id.*

All these specific facts present ample evidence of probable cause that stolen merchandise could be found at Durham's stores. When looking at the totality of the circumstances, the affidavit – and thus the resulting warrant – contain sufficient indicia of probable cause to allow an officer or a judge to reasonably rely on it. Durham correctly argues that even if the warrant is sufficient, however, Defendants Niffenegger and Purdy "cannot rely on it if [they] knowingly made false statements in the affidavit such that, but for those falsities, the warrant would not have been issued." *Hale*, 396 F.3d at 726 (quoting *Yancey v. Carroll Cty.*, 876 F.2d 1238, 1244 (6th Cir. 1989)). Accordingly, we must engage in a second inquiry: Did Durham provide evidence that would undermine reliance on the warrant by Defendants?

### b. There is No Evidence That Defendants Made False Statements in Support of the Affidavits.

The Sixth Circuit has articulated a high bar a plaintiff must show to prove a defendant deliberately falsified information in an affidavit supporting a warrant. "If the defendant does succeed in making a preliminary showing that the government affiant engaged in 'deliberate falsehood' . . . , the court must then consider the affidavit including the omitted portions and determine whether probable cause still exists." *Hale*, 396 F.3d at 726 (quoting *United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997)). Only if the plaintiff makes a "strong preliminary showing that the affiant *with an intention to mislead*," falsified or excluded critical information from the affidavit may the court consider the affidavit and determine whether probable cause exists. *Id.* (internal quotations omitted) (italics in original).

There is no evidence on the record that would establish Defendants Niffenegger and Purdy's intention to mislead the judge. Durham claims that Defendants had a recording that directly contradicted the allegations and observations of Brooks. However, Durham does not even state which allegation in the affidavit was contradicted by that recording.

Moreover, Durham argues that Defendants did not put forth enough effort to corroborate the testimony of Brooks that he had sold Durham stolen property before the investigation and Durham offered to sell the Brooks guns. "Such a claim is not enough . . . because it does not speak to [Defendants'] intent to mislead, it only speaks to the thoroughness of [their] investigation." *Hale*, 396 F.3d at 727. As a result, on this basis alone, Defendants Niffenegger and Purdy are entitled to qualified immunity in relation to Durham's unreasonable search and seizure claim.

### ii.    Excessive Force.

Durham alleges "that it was unreasonable for officers to enter his store with guns brandished, and . . . for officers to point a cocked and loaded shotgun in his face during a search for video games." Doc. 173, PageID 3441. Niffenegger and Purdy argue they are entitled to qualified immunity as to Durham's excessive use of force claim. Doc. 179, PageID 3566–68. The Court must determine both whether Niffenegger and Purdy violated Durham's constitutional rights and whether the right was "clearly established." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015).

The Fourth Amendment prohibits unreasonable searches and seizures. U.S. CONST. AMEND. IV. This includes prohibiting the use of excessive force in effectuating an arrest. *Goodwin v. City of Painesville*, 781 F.3d 314, 321 (6th Cir. 2015). The Court evaluates "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). In other words, an officer's subjective beliefs are irrelevant. *See Est. of Hill by Hill v. Miracle*, 853 F.3d 306, 312 (6th Cir. 2017).

Beyond that, the force is "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Goodwin*, 781 F.3d at 321. The Court also must remain cognizant that "[p]olice officers routinely face 'tense, uncertain, and rapidly evolving' situations that force split-second judgments about the degree of force required." *Reich v. City of Elizabethtown*, 945 F.3d 968, 978 (6th Cir. 2019) (quoting *Graham*, 490 U.S. at 396–97).

20

The Sixth Circuit has recognized that pointing a gun at an individual for an extended period can constitute excessive force under the Fourth Amendment. *See Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010). In *Binay*, the Sixth Circuit held that officers were not entitled to qualified immunity where the officers held plaintiffs at gunpoint for an hour after they were handcuffed, plaintiffs had no criminal record, cooperated throughout the ordeal, posed no immediate threat to officers, and did not resist arrest or attempt to flee. *Id.*

Conversely, in *Marcilis v. Twp. Of Redford*, the Sixth Circuit held that the officers were entitled to qualified immunity where: (1) the police officers threw a plaintiff onto a couch, causing bruises; (2) the police officers threatened to hit plaintiff in the face with a gun; (3) the police officers pushed a plaintiffs "violently" to the floor despite the fact that he was visibly bandaged; (4) the police officers pointed guns at plaintiffs for thirty minutes; (5) the police officers handcuffed plaintiffs for ten minutes; and (6) the federal agents and police officers wore combat gear or masks. 693 F.3d 589, 599 (6th Cir. 2012). The *Marcilis* court held that the police officers could have reasonably believed that their conduct was a lawful means of exercising command of the situation, given the violence and frantic efforts to conceal or destroy evidence often associated with a drug raid. *Id.*

Durham's excessive force claim fails for two reasons. First, Durham provides no evidence that Defendants Niffenegger and Purdy pointed firearms at him when executing the search warrant of his store. During his deposition, Durham indicated that he does not know the name of the officer or officers who pointed guns at him. Doc. 142, PageID 884. Durham cannot pursue claims against unnamed "Does" that are not parties to this case. *See Bufalino v. Michigan Bell Tel. Co.*, 404 F.2d 1023, 1029 (6th Cir. 1968) (holding that the plaintiff cannot pursue claims against "the fictitious designation of 'Does.'").

Second, the force used by the WCSO officers was not excessive.  Durham alleges that "[t]he first [officer] came in and cocked the shotgun at," him and ordered him on the ground. Doc. 142, PageID 884.  Durham states that he was on the ground for less than a minute.  *Id.* And was subsequently handcuffed for about ten minutes.  *Id.* at PageID 887.  He further alleges that guns were pointed at him during this time, and he suffered no physical harm.  *Id.* at PageID 885, 888.  As noted above, the Sixth Circuit has previously viewed situations more severe than what Durham experienced here as a lawful means of exercising command. *Marcilis*, 693 F.3d at 599 (holding that officers' actions were not excess where officers pointed guns at plaintiffs for thirty minutes and physically harmed plaintiff).  Moreover, the intel available to the officers indicated that the use of firearms during Durham's apprehension may be necessary because Durham may be armed.  Doc. 144-5, PageID 1452.

As such, the Court finds that Defendants Niffenegger and Purdy's actions were objectively reasonable considering the facts and circumstances confronting them.  Defendants are thus entitled to summary judgment on Durham's excessive force claim.

### iii.    First Amendment.

Durham argues that his arrest constitutes a First Amendment retaliation.  However, since – as found above – the officers had probable cause to detain Durham, his First Amendment claim must fail.  *See Nieves v. Bartlett*, 139 S. Ct. 1715, 1724 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest.").

Even if Durham could demonstrate a lack of probable cause, he "'must [then] show that the retaliation was a substantial or motivating factor behind the [arrest], and, if that showing is made, the defendant can prevail only by showing that the [arrest] would have been

22

initiated without respect to retaliation.'" *Id.* at 1725 (quoting *Lozman v. City of Riviera Beach*, 138 S. Ct. 1945, 1952–53 (2018)).  Durham falls short on those requirements as well.  The record is devoid of any evidence that Defendants Niffenegger and Purdy were motivated to retaliate against Durham because of his speech; rather, the officers acted in response to an illegal fencing operation that Durham allegedly operated.  Defendants are entitled to summary judgment on this claim.

### iv.  Malicious Prosecution.

Durham next raises a malicious prosecution claim, though it is unclear whether the claim is brought under state or federal law.  *See Fox v. DeSoto,* 489 F.3d 227, 237 (6th Cir. 2007) (analyzing a malicious prosecution claim under both state and federal law where the court was uncertain under which law the claim was brought).  The Supreme Court of Ohio instructs that:

> In order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: (1) malicious institution of prior proceedings against the plaintiff by defendant, (2) lack of probable cause for the filing of the prior lawsuit, (3) termination of the prior proceedings in plaintiff's favor, and (4) seizure of plaintiff's person or property during the course of the prior proceedings.

*Robb v. Chagrin Lagoons Yacht Club, Inc.,* 75 Ohio St. 3d 264, 264, 662 N.E.2d 9 (1996) (internal ellipses omitted).  Although the elements of a federal claim for malicious prosecution remain uncertain, "[w]hat is certain, however, is that such a claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute." *Fox,* 489 F.3d at 237.

Durham fails to adequately allege, let alone demonstrate through evidence, that Defendants "instituted" the criminal proceedings against Durham in the sense that they made, influenced, or participated in the decision to prosecute.  The decision to prosecute was

made by the Warren County prosecutor and not Defendants.  Officers "cannot be held liable for malicious prosecution when they did not make the decision to prosecute the plaintiff." *McKinley v. City of Mansfield,* 404 F.3d 418, 444 (6th Cir. 2005) (quoting *Skousen v. Brighton High Sch.,* 305 F.3d 520, 529 (6th Cir. 2002)) (internal alterations omitted).  Accordingly, Defendants are entitled to summary judgment on Durham's malicious prosecution claim.

     **v.    Due Process.**

Durham also argues that he was deprived of due process in violation of the Fourth Amendment.  However, it is not clear what exactly Durham alleges in support of this claim.  To establish a procedural due process violation, Durham must demonstrate that: (1) a constitutionally protected life, liberty, or property interest is at stake; (2) Defendants Niffenegger and Purdy deprived him of this protected interest; and (3) he was not afforded adequate procedural rights prior to depriving his protected interest.  *See Gregorcic v. City of Stow*, No. 99-3781, 2000 WL 1140520, at *3 (6th Cir. Aug. 3, 2000) (citing *American Mfrs. Mutual Ins. Co. v. Sullivan*, 526 U.S. 40, 60–61 (1999); *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).

Durham argues that his due process rights were violated because he was prosecuted without probable cause.  Durham does not cite to any authority supporting this claim.  And, as previously found, the WCSO had probable cause in executing the search warrant that led to Durham's arrest.  Defendants Niffenegger and Purdy are therefore entitled to summary judgment on Durham's due process claim.

24

### C.    Defendant Christian is not a State Actor Under Section 1983.

Durham argues that Defendant Christian, an investigator for Defendant Target, is a state actor under 42 U.S.C. § 1983.  Defendant Christian argues that Durham's claims are barred because he does not fit the bill.  The Court agrees with Christian.

Section 1983 provides a remedy against any person acting under color of state law for "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  Only claims against "state actors" are eligible for relief under the statute.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 940 (1982).

To determine whether a private entity qualifies as a state actor, the Court typically asks whether their "conduct is fairly attributable to the State." *Filarsky v. Delia*, 566 U.S. 377, 383 (2012) (quotation omitted).  In addition, the Supreme Court has used other helpful inquiries to determine whether an entity should be treated as a state actor under § 1983.  Such as: did the State compel the defendant to act the way it did? *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001).  Was there a symbiotic relationship or nexus between the defendant and the State? *See Rendell-Baker v. Kohn*, 457 U.S. 830, 842–43 (1982).  Did the defendant serve a public function traditionally handled just by the State? *See Jackson v. Metro. Edison Co.*, 419 U.S. 345, 352 (1974).

Application of these tests to the conduct of a private entity, however, is relevant only in cases in which there are no allegations of cooperation or concerted action between state and private actors.  *Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000) ("If a private party has conspired with state officials to violate constitutional rights, then that party qualifies as a state actor and may be held liable pursuant to § 1983."); *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989) (holding that individuals who conspire with state actor to deprive

25

individuals of their federally-protected rights may be found to have acted under color of state law for purposes of § 1983 liability).  Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents.  *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980); *see also United States v. Price*, 383 U.S. 787, 794 (1966) (stating that to act under color of law does not require that the accused be an officer of the State; rather, it is enough that he is a willful participant in joint activity with the State or its agents); *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985) ("Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983.").

Importantly, it requires more than mere cooperation with a state investigation for a private person to become a state actor.  *Lansing v. City of Memphis*, 202 F.3d 821, 831 (6th Cir. 2000) (finding that a corporation was not a state actor, even though it cooperated with—and provided economic benefit to—the city); *Boykin v. Van Buren Twp.*, 479 F.3d 444, 452 (6th Cir. 2007) ("Boykin fails to direct us to any authority from this Circuit for the proposition that a private security guard, who merely places a call to police that a suspected shoplifting has occurred, but in no way directly confronts the suspect, can be deemed a state actor for purposes of § 1983."); *Williams v. Walmart's, President*, No. 1:18-cv-518, 2018 WL 8415547, at *4 (S.D. Ohio Sep. 21, 2018) ("A private actor does not become a state actor merely by placing a call to police concerning a suspected shoplifting.").

Durham claims Defendant Christian and the State engaged in a conspiracy to violate his constitutional rights, making Christian a state actor.[7]  To succeed on his claim, Durham

---

[7] Durham points to *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) and *Hill v. Langer*, 86 F. App'x 163 (6th Cir. 2004), for the proposition that a private party's joint participation with a state actor in a conspiracy to discriminate constitutes a state action for purposes of 42 U.S.C. §1983.  However, the Sixth Circuit "has confined the *Lugar* 'joint action' test to challenged *prejudgment attachment procedures.*"  *Revis v. Meldrum*, 489 F.3d 273, 292 (6th Cir. 2007) (citing *Hill*, 86 F. App'x at 163) (emphasis in original).

must show that "(1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive [Durham] of his constitutional rights, and (3) an overt act was committed." *Chaplin v. Anderson*, No. 18-12108, 2019 WL 1219412, at *3 (E.D. Mich. Mar. 15, 2019) (citing *Revis*, 489 F.3d at 290).

Durham has not established a conspiracy between Defendant Christian and the WCSO because his constitutional rights were not violated.[8]  *See supra,* Section III.B. Accordingly, the Court need not engage with other elements of Durham's § 1983 claims against Christian, and Christian is entitled to summary judgment on the same.

## IV.   CONCLUSION

For the reasons stated, the Court **GRANTS** the motions for summary judgment of Defendants Walmart and Scott Hollopeter, Target and Christian, and Detectives Niffenegger and Purdy (Docs. 163, 167, 169) and **DISMISSES** Plaintiff Durham's Amended Complaint (Doc. 40) **WITH PREJUDICE**.  The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**SO ORDERED.**

Date:  December 6, 2023

Hon. Jeffery P. Hopkins
United States District Judge

---

[8] Durham's federal civil conspiracy claim against Defendants also fails for the same reason: Durham's constitutional rights were not violated. *See Hooks*, 771 F.2d at 943–44 (holding that a civil conspiracy to violate the plaintiff's civil rights cannot stand where the underlying civil rights claim is unsupported).